Henry D. THORNTON,
Plaintiff-Appellee,

v.

Maj. Gen. John COFFEY, Jr.,
Defendant-Appellant.

No. 78–1702.

United States Court of Appeals,
Tenth Circuit.

Argued Jan. 24, 1980.

Decided March 28, 1980.

Alfred Mollin, Atty., Dept. of Justice, Civil Division, App. Staff, Washington, D. C. (Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., Larry D. Patton, U. S. Atty., Oklahoma City, Okl., and Robert E. Kopp, Atty., Dept. of Justice, Civil Division, App. Staff, Washington, D. C., with him on the brief), for defendant-appellant.

Lewis Barber, Jr., Oklahoma City, Okl., for plaintiff-appellee.

Before BARRETT, DOYLE and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Henry David Thornton, a black, filed this action in district court seeking injunctive and monetary relief for alleged racial discrimination and retaliation by the Oklahoma National Guard, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–16.

Thornton served in the regular Army from 1961 through 1970. In January, 1971, he joined the Oklahoma National Guard as a Captain, serving as a part-time or weekend soldier. The National Guard also employs people in full-time civilian jobs, although a person cannot hold a full-time position unless he is also a military member of the Guard. 32 U.S.C. § 709. In January, 1973, Thornton applied for a civilian job with the Guard as the Equal Employment Officer (EEO) for the state, a position he did not receive. In September, 1973, Thornton applied for another civilian position and was not selected.

On October 26, 1973, Thornton sent a letter to the Civil Service Commission alleging discrimination concerning his failure to be selected for the EEO position. A formal complaint was made to the National Guard on February 28, 1974. In March, 1975, an investigation and report were made by the Assistant Executive Officer, National Guard Bureau, Department of Army, in which no discrimination was found. Thereafter, Thornton requested a formal hearing on the matter, which was held before the U. S. Civil Service Commission. On December 19, 1975, a final decision was rendered finding no discrimination.

In the meantime, in connection with his military position in the Guard, Thornton was given an adverse Officer's Efficiency Report (OER) for the period from May 2, 1975 through August 10, 1975, which report was not rendered until February 2, 1976. He filed this action on February 27, 1976, alleging *inter alia* that the Guard unlawfully discriminated against him on the basis of his race when it refused to hire him for the civilian EEO position, and then retaliated against him for filing the discrimination complaint by its preparation of the adverse military OER.

Subsequently, Thornton was discharged from the National Guard on May 6, 1977, pursuant to the Reserve Officer Personnel Act. That Act requires any officer not promoted within three years to leave the Guard and accept a mandatory promotion into the Army Reserve. Thornton had failed to achieve promotion to Major within the required time. Upon his discharge from the military side of the Guard, Thornton was no longer eligible to hold a civilian position.

The trial court found that Thornton was denied the position of Equal Employment Officer for racial reasons, but made no findings concerning the adverse OER or Thornton's failure to receive a military promotion. The court ordered Thornton to be retroactively promoted to a civilian GS–11 grade, and awarded back pay in the amount he would have received if he had been given the EEO position, beginning on September 15, 1973. While the Guard was not ordered to immediately place Thornton as the EEO, Thornton was given the right of first refusal when the position becomes available. In addition, the court ordered Thornton reinstated in the Guard with a promotion to the rank of Major, retroactive to September 19, 1973. Thornton was awarded the corresponding back pay for this military promotion.

For reasons set out below, we affirm the trial court's award of back pay for the EEO position for the period of September 15, 1973 only up to May 6, 1977, the date on which Thornton was discharged from the Guard and became ineligible for the position. We reverse the trial court's order that the Guard reinstate Thornton and retroactively promote him to the military rank of Major. Consequently, we reverse the corresponding award of military back pay, and the order that Thornton be given the right of first refusal of the EEO position.

## I.

### The Equal Employment Officer Position

The trial court found as a conclusion of law that Thornton established a prima facie case of racial discrimination in connection with his denial of the EEO position.[1] It further concluded that the Guard failed to rebut this prima facie case with a valid business reason. The court based its legal conclusions on fact findings which support Thornton's qualifications for the job, and demonstrate both the Guard's past history of deliberate segregation and the absence of black officers in full-time civilian positions.

The findings of fact by a trial court must be upheld on appeal unless they are clearly erroneous. Fed.R.Civ.P. 52(a). We have held that findings are not to be determined clearly erroneous unless, after a review of the entire record, we are left with a definite and firm conviction that a mistake has been made. *Diggs v. Western Electric Co.*, 587 F.2d 1070 (10th Cir. 1978). Our study of the record shows that the trial court's findings are supported by the evidence and are not clearly erroneous.

■ Thornton was required to first prove a prima facie case of employment discrimination under the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). We believe he did this by showing that he 1) belongs to a racial minority; 2) that he applied and was qualified for a job for which the employer was seeking applicants; 3) that, despite his qualifications, he was rejected; and 4) that, after his rejection, the position remained available.

The only controverted issue in the finding of a prima facie case is whether Thornton was qualified for the position. The record shows that Thornton received very favorable officer efficiency ratings while in the Army. Rec., vol. III, at 116, 117, 118. Even the reports offered by the Guard show that Thornton was rated as superior

with only one exception. Rec., vol. IV, Def.Ex. 6. He received an Army Commendation Medal in 1970. Rec., vol. III, at 108. His academic record shows specialized college-level education in race relations and minority groups. Rec., vol. III, at 121. His application for the EEO position lists impressive involvement in devising and teaching programs dealing in human relations for Oklahoma State University and the Post Office. Rec., vol. III, at 139. The trial court clearly had sufficient evidence to find that Thornton was qualified for the position he sought.

■ Once Thornton established a prima facie case, the Guard then had the burden of proving that the employment decision was based upon a legitimate, nondiscriminatory reason. *Furnco Const. Co. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1977). To meet this burden, the Guard contended it was justified in selecting another applicant, Colonel William Kelley, because Kelley had ranked higher than Thornton under the evaluation system used by the Guard. We find the use of this rating procedure by the Guard to be improper under *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), and affirm the trial court's finding of no valid business reason.

The Oklahoma National Guard was segregated by law until 1958. Rec., vol. V, at 100, 234–35. The Guard testified at trial that no black officer had ever been a full-time employee of the Guard. Rec., vol. V, at 100, 118. Kelley, who is white, has been a full-time Guard employee since 1956. The Guard admits that the rating procedure applied to Thornton and Kelley favored applicants who were already full-time civilian employees. *Griggs* holds that "under the Act [Title VII], practices, procedures, or tests neutral on their face, and even neutral in terms of intent, cannot be maintained if they operate to 'freeze' the status quo of prior discriminatory employment practices." 401 U.S. at 430, 91 S.Ct. at 853.

---

1. Thornton's application for the EEO job was made before his application for the other full-time Guard position. Because we uphold the trial court's finding of discrimination in connec-

tion with the first position, we need not consider his claim regarding the later job which carried a lower GS rating.

It is beyond argument that a rating procedure used by an historically segregated employer which favors applicants already employed full-time falls squarely within the prohibition of *Griggs*. *See Spurlock v. United Airlines, Inc.*, 475 F.2d 216 (10th Cir. 1972); *Jones v. Lee Way Motor Freight, Inc.*, 431 F.2d 245 (10th Cir. 1970), *cert. denied*, 401 U.S. 954, 91 S.Ct. 972, 28 L.Ed.2d 237 (1971). Any claim which the Guard might raise that the rating procedure was required by business necessity is obviated by the fact that the Guard stopped using the procedure well before trial, and implemented what it felt to be a better rating method. The new method does not prefer applicants already "on board". Rec., vol. V, at 109, 121.

The only other reason given for Kelley's selection for the EEO position was offered by Major General David Matthews, the selecting officer. He testified at trial that he had chosen Kelley because he had soldiered with him for twenty years and felt he could do the job. Rec., vol. V, at 83. He also testified that the affirmative action requirements placed upon the Guard did not enter into his decision. Rec., vol. V, at 86. The trial judge found this justification to be insufficient to rebut Thornton's prima facie case and noted that such a subjective determination may offer a convenient pretext for giving force and effect to racial prejudice, perhaps without a conscious effort by the decision maker. *Abrams v. Johnson*, 534 F.2d 1226 (6th Cir. 1976). We agree.

We affirm the trial judge's finding that Thornton's failure to be selected for the EEO position was in violation of Title VII. However, we uphold the award of back pay only for the period up to May 6, 1977, the date Thornton was discharged from the Guard. For the reasons stated below, we find that any award for back pay after that date must be stayed pending final disposition of this case in accordance with the remainder of this opinion.

## II.

### The Military Promotion

Thornton alleges that the adverse Officer Efficiency Report is substantively incorrect, and was prepared in retaliation for his civilian discrimination complaint. OERs are of primary concern when an officer is considered for promotion. *Horn v. Schlesinger*, 514 F.2d 549 (8th Cir. 1975); *Sanders v. United States*, 594 F.2d 804 (Ct.Cl.1979). Thornton's adverse OER may have resulted in his failure to receive a promotion. Thornton had to leave the Guard when he was not promoted, and he cannot hold the full-time civilian position as EEO officer when it becomes vacant unless he is a military member of the Guard. Therefore, Thornton contends on appeal that the trial court properly gave him the complete relief to which he was entitled as a result of the civilian employment discrimination by ordering the Guard to promote him in the military.

As we have noted, the EEO position with the National Guard has a dual status, both civilian and military. Consequently, the trial court was faced with a conflict in judicial policies when it attempted to give Thornton a remedy for the discrimination it found. The court has a duty when it finds a Title VII violation to use the wide variety of discretionary powers given it by Congress to fashion the most complete relief possible. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975). In the usual civilian case these powers include both the award of back pay and appropriate injunctive relief. *Id.* However, the courts also have a strong policy of avoiding interference in internal military matters. *Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–540, 97 L.Ed. 842 (1953). This policy is particularly compelling with regard to military promotions. *Yee v. United States*, 512 F.2d 1383 (Ct.Cl.1975); *Brenner v. United States*, 202 Ct.Cl. 678 (1973), *cert. denied*, 419 U.S. 831, 95 S.Ct. 54, 42 L.Ed.2d 56 (1974). We find that the trial court did not strike the proper balance between these conflicting judicial policies for two reasons. First, Thornton must exhaust his administrative remedies, and, second, we have

grave doubts that the power of the court extends to the ordering of military promotions.

In *Bard v. Seamans*, 507 F.2d 765 (10th Cir. 1974), we held that a person who seeks to have a military record reviewed and corrected must first exhaust his administrative remedies. Thornton has not done so. As *Bard* points out, the Army Board for the Correction of Military Records (BCMR) is the review mechanism provided by Congress. *See* 10 U.S.C. § 1552. The BCMR considers applications for the correction of military records and claims for loss of pay under procedures set out in 32 C.F.R. § 581.3, promulgated pursuant to section 1552.

Courts have emphasized that application of the doctrine of exhaustion is particularly desirable in matters of military promotion. *Horn v. Schlesinger*, 514 F.2d 549 (8th Cir. 1975); *Sanders v. United States*, 594 F.2d 804 (Ct.Cl.1979); *Skinner v. United States*, 594 F.2d 824 (Ct.Cl.1979). The need for military expertise is compelling when review of an OER is sought. "An Officer Efficiency Rating as to the quality of an officer's service is a highly subjective process which requires the opinions and judgments of military professionals." *Turner v. Department of Army*, 447 F.Supp. 1207, 1213 (D.D.C.1978).

Although the requirement of exhaustion is not a rigid one, we stated in *Bard* "that a strong policy exists that demands resort to the BCMR *unless to do so would be futile.*" 507 F.2d at 769 (emphasis added). The record is unclear as to why Thornton did not apply to the BCMR to have the adverse OER reviewed for substantive errors.[2] However, he did not do so, and he has not offered any reason why such an application

would be futile. Thornton must resort first to the BCMR to allow "the military an opportunity to exercise its own expertise, and to correct its own errors." *Horn*, 514 F.2d at 553.

■ We note that under 32 C.F.R. § 581.-3(c)(2), one must file an application with the BCMR for review of a record within three years after discovery of the alleged error. However, failure to file within the prescribed time may be excused by the BCMR in the interests of justice. *Id.* In view of the fact that a federal trial judge ordered the promotion of Thornton more than two years ago, which very likely led Thornton to believe he need not consider further administrative remedies, we believe that it would be in the interests of justice for the BCMR to consider Thornton's untimely application should he choose to make one.

■ The BCMR has the power under section 1552 to correct a military record and to order payment for losses incurred because of the incorrect record. It has been held that this statute by implication gives the BCMR the power to provide full reinstatement and back pay. *Knehans v. Alexander*, 566 F.2d 312 (D.C.Cir.1977). There is even some authority to the effect that the BCMR has the power to effect advancement in grade if necessary to correct an injustice. *Horn*, 514 F.2d at 552 n. 11. However, we do not believe that either the BCMR or a reviewing court[3] can order Thornton promoted in the Guard; they can do no more than order the record corrected, reinstatement at discharge rank, back pay, and an opportunity for promotional consideration based upon an accurate record. *Sanders*, 594 F.2d at 820; *Abruzzo v. Unit-*

---

2. Thornton testified at trial that he sought correction of the procedural errors in the OER, Rec., vol. V, at 60, but did not ask to have a review of the alleged substantive errors. The Army investigation in May, 1977, found that Thornton's problems in attempting to deal with the adverse OER were caused in part by serious bureaucratic bungling, and that the officers who were responsible for monitoring the relevant administrative procedures were derelict in performing their duties. Rec., vol. III, at 122.

3. If Thornton successfully applies for administrative review of the adverse OER, the action of the BCMR will be subject to judicial review to determine whether its decision is "arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced . . . ." *Sanders*, 594 F.2d at 811.

*ed States,* 513 F.2d 608 (Ct.Cl.1975); *Yee,* 512 F.2d at 1388.

Accordingly, all trial court awards of injunctive and monetary relief which are based directly or indirectly on Thornton's military promotion must be set aside. Therefore, we reverse the trial court's order that the Guard promote Thornton to the rank of Major and the corresponding award of military back pay. We also reverse the ordered right of first refusal of the EEO position, and the award of civilian back pay for the period after May 6, 1977, when Thornton became ineligible to hold the civilian position. Should Thornton choose to pursue his administrative remedies, the trial court may retain jurisdiction and reconsider appropriate monetary and injunctive relief after the BCMR's final disposition of the OER and military reinstatement issues.

Affirmed in part and reversed in part in accordance with our opinion.