**Joan E. VERNIERO, Plaintiff-Appellant,**

v.

**AIR FORCE ACADEMY SCHOOL DISTRICT # 20, Defendant-Appellee.**

**No. 81-1793.**

United States Court of Appeals, Tenth Circuit.

April 13, 1983.

Judith Ward Mattox of Quiat Dice & Associates, Denver, Colo., for plaintiff-appellant.

R.E. Anderson of Horn, Anderson & Johnson, Colorado Springs, Colo., for defendant-appellee.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

Plaintiff-appellant, Joan E. Verniero (Verniero) filed suit against defendant-appellee Air Force Academy School District # 20 (School District) alleging discrimination based on sex under Title VII of the Civil Rights Act as amended, 42 U.S.C.A. § 2000e et seq. (1981). The basis of the complaint was that the School District discriminated against Verniero in the selection of applicants for two positions: (1) Elementary School Principal at Edith B. Wolford Elementary School; and (2) Director of Special Education for District # 20. Verniero requested as relief: money damages;

an investigation of the selection processes for both positions; a review of the School District's affirmative action plan to eliminate the discriminatory practices complained of; and costs and attorney's fees. Verniero also requested the court to retain jurisdiction over the action to assure full compliance with the court's orders. After a bench trial, the district court entered judgment for the School District. A recital of the pertinent facts will facilitate our review.

On March 27, 1978, the School District posted a vacancy notice for the elementary school principal position. The notice listed the following qualifications: "1. Three years experience in public schools. 2. Masters degree or equivalent is required. 3. A Type D Administrative Certificate is necessary." Def.Ex. L. Verniero was one of two female and thirty total applicants for the position. A six member screening committee, composed of four females and two males, selected nine or ten individuals to interview. Verniero was not selected for an interview. The Board of Education then interviewed four individuals and selected Mr. Dennis Sharon, a Michigan resident, as principal. Mr. Sharon did not possess the Type D Administrative Certificate.

The job vacancy notice posted for the position of Director of Special Education listed the following qualifications: "(1) Three years experience in area of Special Education. (2) Prefer Type D endorsement and/or Sped [Special Education] endorsement." Def.Ex. F. Verniero was one of five female and eleven total applicants for the position. One person later withdrew. A three man screening committee interviewed all the applicants and recommended Mr. Steve Pratt, District # 20's school psychologist, to the Board. The Board hired Mr. Pratt.

It is undisputed that Verniero was qualified for both positions.

The district court found that Verniero had made out a prima facie case of discrimination under the standards enunciated in *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

The court also found that the School District had carried the burden of going forward with the evidence and of articulating a non-discriminatory reason for Verniero's non-selection. The district court then found that since there was no suggestion of any improper reason utilized by any member of either screening committee or the Board regarding the hiring decisions, Verniero had not proven motive or intent to discriminate (*i.e.* the articulated reasons were not pretext); and, Verniero did not carry the ultimate burden of proving she was the victim of intentional discrimination. Judgment was rendered for the School District.

Verniero later moved for a new trial which was denied by the district court.

On appeal Verniero contends that the trial court erred in that it: (1) did not give due weight to its finding that Verniero had established a prima facie case; (2) did not make any findings as to whether the School Board's use of subjective criteria in its selection process was a convenient pretext for giving effect to sex bias; and (3) did not make any finding regarding the waiver of the Type D certificate for the male selected for the principal position. Verniero further contends that the trial court "abused its discretion in its conduct of the trial which was prejudicial to plaintiff." Appellant's Brief at p. 2.

■ Our standard of review is governed by the clearly erroneous rule. We agree with the district court that "[i]t is not the duty of a court nor is it within the expertise of the courts to attempt to decide whether the business judgment of the employer was right or wrong. The court is not a super personnel department. All that a court does is to exercise a very limited review of the employment practices of an employer to see if the practices are shown to be lawful. . . ." R., Vol. III p. 9. Our sole function on appeal is to review the record to ascertain whether it supports the trial court's findings, which findings are not to be set aside unless they are clearly erroneous. *Thornton v. Coffey,* 618 F.2d 686 (10th Cir.1980). "We have held that findings are

not to be determined clearly erroneous unless, after a review of the entire record, we are left with a definite and firm conviction that a mistake has been made." *Id.* at 690 (citation omitted).

A Title VII disparate treatment action for promotion discrimination proceeds in the following manner:

The plaintiff first has the burden of establishing a prima facie case of employment discrimination under the standards set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the prima facie case is established, the defendant must articulate a reason, using admissible evidence, to explain why "the plaintiff was rejected, or someone else preferred, for a legitimate, nondiscriminatory reason." *Texas Department of Community Affairs,* 450 U.S. at 254, 101 S.Ct. at 1094. If such a reason is offered, in order to prevail the plaintiff must demonstrate that the defendant's articulated reason is a mere pretext for unlawful discrimination. *Id.* at 256, 101 S.Ct. at 1095. Throughout these stages, the overall burden of persuasion remains with the plaintiff. *Id.*

*Burrus v. United Telephone Co. of Kansas, Inc.,* 683 F.2d 339, 340–41 (10th Cir.1982). The trial court found that Verniero had established a prima facie case under *McDonnell Douglas, supra.*

■ Verniero argues, however, that the trial court erred in "failing to give due weight to its finding that plaintiff established a prima facie case." Appellant's Brief at p. 12. We find this argument to be meritless. The trial court found that Verniero had established a prima facie case. The court then properly shifted the burden of production of evidence to the School District to articulate a legitimate, nondiscriminatory reason for Verniero's non-selection. R., Vol. III pp. 6–8. The trial court then found that the School District had articulated such reasons. *Id.* at p. 9.

Verniero argues that the reasons articulated by the School District for her non-selection were purely subjective, and that "[s]uch a high level of subjectivity in the decision making selection process subjects the ultimate decision to an intolerable occurrence of conscious or unconscious intent." Appellant's Brief at p. 14.

■ In a recent case we examined the issue of subjective qualifications and held that failure to meet an employer's subjective criteria could not defeat a plaintiff's prima facie case. *Burrus v. United Telephone Co.,* 683 F.2d at 342. Such is not the case here. Verniero was concededly qualified for both positions. She established her prima facie case. She was rejected for both positions based on the subjective opinions of evaluators serving on the screening committees. Under these circumstances, Verniero is entitled " 'to the benefit of an inference of discrimination, which inference requires the defendant ... to come forward and articulate legitimate reasons for her non-selection.' " *Burrus v. United Telephone Co., supra* at p. 342 (quoting *Bauer v. Bailar,* 647 F.2d 1037 (10th Cir.1981)).

■ The School District, as the trial court found, did come forward and articulate reasons for Verniero's non-selection. With respect to the Elementary School Principal position, witnesses for the School District testified that her experience had been mostly in special education, R., Vol. II pp. 64, 112, and that "[m]any of the other candidates had a number of years—many years in some cases—experience similar to what we would expect to have at Wolford school." *Id.* at p. 64. In other words, other candidates were better qualified. One member of the screening committee also testified that she had some question about Verniero's ability to be flexible and to work with the faculty and the people in the community. *Id.* at p. 120, 121.

With respect to the Director of Special Education position, each member of that screening committee testified to the effect that he had doubts about Verniero's ability to get along with people. R., Vol. III pp. 52, 94, 106. Two members of that commit-

tee expressed particular concern about Verniero's ability to correct existing problems at the school, regarding the troubled relationship between the special education and the regular education programs. *Id.* at pp. 94, 107. One member testified that her answers to questions at the interview led him to believe that if Verniero were selected the problems would be perpetuated rather than solved. *Id.* at 107.

Subjective evaluations play a legitimate part in an employer's determination whether an employee has the ability to get along with others. This is a legitimate business reason for the non-selection of Verniero. This is particularly true in a case such as this where problems existing at the school at the time of the selection process had to do with inadequate interaction and communication.

"[T]he employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 257, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981). Since the School District articulated legitimate reasons for Verniero's non-selection, the inference of discrimination is overcome. Similarly, an inference of intent to discriminate is no longer available to Verniero. Verniero "now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision." *Burdine, id.* at 256, 101 S.Ct. at 1095. "This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Id.*[1] "She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. *See McDonnell Douglas,* 411 U.S., at 804–805 [93 S.Ct. at 1825–

26]." *Id.* Significant here, we believe, is that when a case is tried to the court, the resolution of conflicting evidence and the determination of credibility of witnesses, taking their appearance and demeanor into consideration, are matters particularly reserved to the province of the trial judge. *Dowell v. United States,* 553 F.2d 1233 (10th Cir.1977).

■ Verniero contends that inasmuch as the School District waived the Type D administrative certificate for the selectee, Mr. Sharon, after having listed it as a job qualification for the principal position, the trial court erred in not making a finding that the proffered reasons were pretextual. Testimony indicated that certificated requirements were waived in certain circumstances with out-of-state personnel. R., Vol. III p. 97. Testimony also indicated that an out-of-state person was preferred for the principal position. *Id.* at pp. 130, 131. Verniero did not prove by a preponderance of the evidence that the articulated reasons were pretextual. *See Burdine, supra.* She did not persuade the court that a discriminatory reason more likely motivated the School District, or that the School District's explanations were unworthy of credence. *Burdine, supra* 450 U.S. at 256, 101 S.Ct. at 1095. The record supports the trial court's finding that the School District did not impermissibly discriminate against Verniero.

■ Verniero also argues that the trial judge acted in a manner which was prejudicial to her. First, Verniero attacks the trial court's references to and approval of the similarity between the School Board's selection process and the United States Magistrate's selection process. Second, she attacks the trial court's comments at the close of the trial exhibiting "[i]ts distaste for attacks upon School Board members on civil rights matters. . . ." Appellant's Brief at p. 11.

---

1. "It should be noted that the presence of discriminatory motive is highly important and indeed critical in order for the plaintiff to succeed here." *Bauer v. Bailar, supra,* 647 F.2d at 1044 (citing *International Brotherhood of Teamsters*

*v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). *Accord, Coe v. Yellow Freight System, Inc.,* 646 F.2d 444 (10th Cir. 1981).

We find both arguments to be without merit. The trial court did indicate it thought the two selection processes were similar; however, these comments had no bearing on the three-part analysis regarding the shifting burdens of persuasion mandated by *McDonnell Douglas* and *Burdine, supra*. The trial court followed that analysis and concluded that no sex discrimination had occurred. Indeed, Verniero admits she has no quarrel with the process *per se*. Appellant's Brief at p. 10. The trial court's comments, therefore, were of no moment. With regard to the second contention involving the trial court's remarks, delivered at the close of the bench trial preliminary to the court's findings of fact and conclusions of law, we view them as misplaced, but harmless in context.[2]

We have reviewed the entire record. We hold that the trial court was not clearly erroneous in concluding the School Board did not discriminate against Verniero on the basis of sex. There is substantial evidence to support the trial court's conclusion. *Burrus v. United Telephone Co., supra*. "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." Fed. R.Civ.P. 52(a). Appellate courts cannot upset a trial court's findings unless firmly convinced that, from the entire record, a mistake has been made. *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). It is not the function of the court of appeals to weigh conflicting evidence and to consider the credibility of witnesses. *United States v. Gibbons*, 607 F.2d 1320 (10th Cir.1979).

We have examined Verniero's remaining contentions. We hold that they are without merit.

AFFIRMED.

McKAY, Circuit Judge, dissenting:

In resolving Ms. Verniero's employment discrimination claim, the majority applies a method of analysis that is inconsistent with our recent decision in *Mohammed v. Callaway*, 698 F.2d 395 (10th Cir.1983). I view *Mohammed* as the controlling authority and am therefore compelled to dissent.

In *Mohammed*, a Hispanic civilian employee of the Army applied for a supervisor's position in response to a posted job vacancy announcement. The announcement listed specific job qualifications that the minority applicant possessed. Following his application, the employer relaxed the job qualifications and hired a non-minority applicant. The non-minority applicant did not have the original job qualifications, but nevertheless was hired over the minority applicant on the basis of "subjective factors." The minority applicant sued

---

2. Before making his oral findings of fact and conclusions of law, the trial judge made the following remarks:

Not as a part of any findings of fact or as any conclusions of law, but purely as a preliminary matter, the courts of the United States of America today, because of the requirements imposed upon the courts by Congress, are for some reason supposed to be experts in everything. And I fear that the judges of the United States of America qualify as experts in very few things. But what Congress has done is that every time Congress gets a difficult problem it passes the buck to the courts. And most assuredly, I am no expert in matters such as this. All I know is that federal courts of this country are totally burdened with discrimination cases of every type, nature and description. And, indeed, if certain provisions of the criminal code were applicable to these cases, I would be tempted to enforce them. The provision I have in mind is in Title XVIII, which is the criminal code, and it's Section 4244 of the criminal code. That section says that when the Court has reason to question the sanity of a defendant, the Court must order a mental examination.

And I wonder, if that section were applicable, if every school board member in the United States shouldn't be ordered examined under Section 4244. I don't know why anyone would serve on any school board. But the only way that I know that any school board member or employer can absolutely be sure of avoiding discrimination cases is to hire only handicapped females having as grandparents a Black, a Chicano, an American Indian and an Oriental, who is over 50 years of age. I think that takes care of all of the discrimination statutes.

R., Vol. III pp. 2–3.

under Title VII.[1] Following a bench trial, the district court concluded that no illegal discrimination had occurred. On appeal, we determined that the plaintiff had established a prima facie case under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Mohammed,* 698 F.2d at 398. In analyzing whether the subjective factors cited by the employer constituted legitimate nondiscriminatory reasons for rejecting the minority applicant, we first determined that since the minority applicant had met the stated job qualifications, while the other applicant had not, the minority applicant was more highly qualified under the employer's own published criteria. 698 F.2d at 399–400. Turning to the use of subjective factors in rejecting the minority applicant, we stated that

> the use of subjective factors supports an inference of pretext when an employer justifies rejection of a minority candidate on the basis of such factors even though the minority is objectively better qualified than the non-minority chosen. *Adams* [*v. Gaudet,* 515 F.Supp. 1086, 1097 (W.D.La.1981)]. The use of such subjective criteria as "dedication" and "enthusiasm" also "may offer a convenient pretext for giving force and effect to racial prejudice," *Thornton* [*v. Coffey,* 618 F.2d 686, 691 (10th Cir.1980)], and "can create a strong inference of discrimination if there is a showing of significant disparity in the representation of a particular group." *Bauer* [*v. Bailar,* 647 F.2d 1037, 1045 (10th Cir.1981)]; *see also Abrams v. Johnson,* 534 F.2d 1226, 1231 (6th Cir. 1976); *Adams,* 515 F.Supp. at 1097.

698 F.2d at 401. We concluded that the use of subjective factors, together with other evidence of pretext, rebutted the employer's proffered statement of legitimate nondiscriminatory reasons for rejecting the minority applicant. We accordingly reversed the district court judgment.

The instant case presents a situation analogous to *Mohammed.* The record indicates that the school board posted three job requirements for the position of principal: 1) three years experience in public schools; 2) a master's degree or equivalent; and 3) a Type D Administrative certificate. Ms. Verniero met these three requirements; nevertheless, a male applicant who did not possess a Type D certificate was chosen on the basis of subjective factors.

In reviewing the trial court's determination that there was no illegal discrimination, we should follow the method of analysis laid out in *Mohammed.* We should first inquire if the trial court properly examined whether Ms. Verniero was more qualified than the chosen applicant under the specific job qualifications set forth by the school board. We should then ask if, in determining that the employer's decision was based on legitimate nondiscriminatory reasons, the trial court gave adequate consideration to the employer's use of subjective factors in rejecting Ms. Verniero and to any other evidence of pretext. It appears from the record that the trial court did not consider either of these inquiries, nor did it make factual findings that enable us to apply the *Mohammed* test. While it cannot be said as a matter of law whether Ms. Verniero would prevail under the method of analysis provided in *Mohammed,* there is evidence to support her claim of pretext. I would therefore remand this case to the district court for further proceedings in light of *Mohammed.* In any event, this court must recognize *Mohammed.* In choosing to reach the merits of this case, the majority is required to apply the method of analysis that *Mohammed* sets forth. Absent an *en banc* decision overturning *Mohammed,* it provides the law of this Circuit.

Beyond the issues raised under *Mohammed,* the decision of the district court is rendered suspect by inappropriate statements from the bench by the trial judge. The judge prefaced his oral findings of fact and conclusions of law with statements disparaging Congress, Title VII, and litigants in employment discrimination cases.[2] His

---

1. 42 U.S.C. §§ 2000e–2000e–17 (1976).

2. Judge Winner stated as follows:

statements displayed a clearly hostile attitude toward Title VII, a statute that he is obligated to interpret and enforce. In my view, the judge's statements provide strong grounds for questioning his impartiality. They are particularly inappropriate in a case where he must make factual findings concerning motivation and intent—issues that are not amenable to objective verification. If courts are to retain public confidence that they can adjudicate these questions fairly, judges must conduct themselves in a manner that casts no doubt on their impartiality.

This court has long recognized the importance of judicial impartiality, holding that appellate courts have an inherent power to assure the absence of bias in the district courts. *Texaco, Inc. v. Chandler,* 354 F.2d 655, 657 (10th Cir.1965), *cert. denied,* 383 U.S. 936, 86 S.Ct. 1066, 15 L.Ed.2d 853 (1966); *see United States v. Ritter,* 540 F.2d 459 (10th Cir.), *cert. denied,* 429 U.S. 951, 97 S.Ct. 370, 50 L.Ed.2d 319 (1976); *Occidental Petroleum Corp. v. Chandler,* 303 F.2d 55 (10th Cir.1962), *cert. denied,* 372 U.S. 915, 83 S.Ct. 718, 9 L.Ed.2d 722 (1963); *United States v. Ritter,* 273 F.2d 30 (10th Cir.1959), *cert. denied,* 362 U.S. 950, 80 S.Ct. 863, 4 L.Ed.2d 869 (1960). Recently, Congress has recognized that the appearance of impartiality is as important as actual impartiality in maintaining public confidence in the judiciary. In this regard, Congress codified the American Bar Association's standard of judicial conduct, imposing upon the federal judge the affirmative obligation to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (Supp. V. 1981) (codifying Canon 3 C of the ABA Code of Judicial Conduct).

I believe that the district court judge's statements in the instant case are flatly inconsistent with the impartial demeanor required by the statute. Moreover, they express a totally inappropriate hostility toward the law he is charged to apply. Even if no other questions of error were presented, these statements would raise colorable grounds for granting a new trial.

In this case, there exist serious doubts that the correct legal standard for determining employment discrimination was applied. Given these doubts and given the intemperate remarks of the trial judge, I believe we should vacate the judgment and remand the case for a new trial.

Because it is a trial to the Court, Rule 52 mandates that I do not have the same delightful luxury that a jury has in just finding in favor of one party and against the other. To the exact contrary, in a trial to the Court I must make findings of fact and conclusions of law, albeit they may not be in tremendous detail in this case, but hopefully they will be sufficient to satisfy the requirements of Rule 52 of the Federal Rules of Civil Procedure.

Not as a part of any findings of fact or as any conclusions of law, but purely as a preliminary matter, the courts of the United States of America today, because of the requirements imposed upon the courts by Congress, are for some reason supposed to be experts in everything. And I fear that the judges of the United States of America qualify as experts in very few things. But what Congress has done is that every time Congress gets a difficult problem it passes the buck to the courts. And most assuredly, I am no expert in matters such as this. All I know is that federal courts of this country are totally burdened with discrimination cases of every type, nature and description. And, indeed, if certain provisions of the criminal code were applicable to these cases, I would be tempted to enforce them. The provision I have in mind is in Title XVIII, which is the criminal code, and it's Section 4244 of the criminal code. That section says that when the Court has reason to question the sanity of a defendant, the Court must order a mental examination.

And I wonder, if that section were applicable, if every school board member in the United States shouldn't be ordered examined under Section 4244. I don't know why anyone would serve on any school board. But the only way that I know that any school board member or employer can absolutely be sure of avoiding discrimination cases is to hire only handicapped females having as grandparents a Black, a Chicano, an American Indian and an Oriental, who is over 50 years of age. I think that takes care of all of the discrimination statutes.

Record, Vol. 3, at 2–3.