**Allen PAYNE, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**Civ. A. No. 88–2482–O.**

United States District Court, D. Kansas.

Feb. 14, 1990.

Larry Delano Coleman, Kansas City, Mo., Denise L. Adams, Rosie M. Quinn & Associates, Kansas City, Kan., for plaintiff.

Paul Scott Kelly, Jr., John J. Yates, Gage & Tucker, Kansas City, Mo., Stephen A. Murphy, Gage & Tucker, Overland Park, Kan., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter comes before the court on the cross motions of plaintiff Allen Payne ("Payne") and defendant General Motors Corporation ("GM") for partial summary judgment. Payne filed this action against his former employer, GM, alleging race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, race discrimination in violation of the Reconstruction Era Civil Rights Act (42 U.S.C. § 1981), and negligent infliction of emotional distress. With the exception of Payne's Title VII promotion claims, GM seeks summary judgment on all aspects of the case. For the reasons stated below, we will grant defendant's summary judgment motion in part and deny plaintiff's motion for partial summary judgment.

## I. STATEMENT OF FACTS

Allen Payne, a black male, accepted a lateral transfer from GM's automobile assembly plant in Bowling Green, Kentucky, to GM's Fairfax facility in Kansas City, Kansas, where he was a fifth-level reliability engineer. In April of 1986, GM supervisor, Will Shinn ("Shinn"), instructed plaintiff to change a specification on the "pull test gauge to the header panel" of automobiles under production. During the course of the next several months, Payne repeatedly requested GM central office approval for the change, which, according to plaintiff, angered Shinn and otherwise caused a "rude" reaction from Shinn.

On a Friday in July of 1986, plaintiff was not able to report to work because of mechanical difficulties with his car. Plaintiff maintains that Shinn called him a "liar" and swore at him during a discussion between the two on the following Monday. Shinn also allegedly stated in the month of July that "I am tired of you damn people being in here every time I come in here." [1]

---

1. With regard to this statement, Payne fails to identify who Shinn allegedly called "you damn people."

Payne claims that in August of 1986 Shinn argued with him, "ranted and raved" at him, and threw several objects at him. Plaintiff states that Shinn's harassment created a tense and offensive working environment. He says the harassment continued despite his report to upper GM management of Shinn's behavior. Payne adds that "white employees [were] not subject to [Shinn's] treatment."

On August 20, 1986, plaintiff filed a charge of race discrimination with the Equal Employment Opportunity Commission ("EEOC") based upon GM's alleged failure to provide him with the following: a timely appraisal in 1986, annual wage increases, a sixth-level promotion, an environment free of harassment, and the opportunity to interview for a transfer. Payne alleges that defendant discriminated against him in 1985, when he was not permitted to interview for positions at or transfer to GM plants in St. Louis, Missouri, and Detroit, Michigan. Payne identifies the positions for which he applied as "sixth-level supervisory positions." GM does not dispute that these jobs were available at the time in question. Plaintiff testified that a promotion would have provided him with the opportunity to work in different "areas," such as paint, motor, chassis, and trim.

Payne's annual performance appraisals were usually conducted in July. GM contends plaintiff did not receive his evaluation in 1986 until October 29, in part because his supervisor, Shinn, was on a disability leave of absence from July 31 to August 18, 1986. In order to be evaluated, a GM employee must complete an appraisal worksheet. In 1986, Payne received a copy of his worksheet on August 22. Plaintiff completed the worksheet on October 28, 1986.[2] On the next day, October 29, plaintiff received his annual performance evaluation. He received an overall rating of "highly effective."

In 1986, the timing and amounts of salary increases and promotions of GM Fairfax employees were not related to the timing of the employees' performance evaluations. Employment decisions relating to salary increases and promotions were based primarily upon the most recent evaluation in an employee's file. While GM makes an effort to conduct annual performance appraisals on a timely basis, evaluations are commonly delayed for various reasons. Such delays have occurred with regard to the evaluations of black as well as white employees. Male and female employees of GM have also experienced delays before receiving their evaluations.

Plaintiff alleges that he was treated less favorably than two white female employees, Karen Grafton ("Grafton") and Patty Daugherty ("Daugherty"), with respect to the timing and amount of his salary increases. Daugherty and Payne held fifth-level positions. On February 1, 1985, Grafton received a merit increase of $90.00 per month (4%), and five months later, plaintiff obtained a merit increase of $134.24 per month (5%). While Daugherty and Grafton were awarded merit increases in 1986 of $131.10 per month (5.8%) and $118.44 per month (4.6%) respectively, Payne received a merit increase of $111.32 per month (3.8%) that year. Timothy Danahy, personnel director of the GM facility in Kansas City, indicated that Daugherty was awarded her merit increase because she was promoted to a fifth-level position.

The following chart names five white GM employees who were promoted to sixth-level positions. The chart also identifies the employees' new positions and the dates of their promotions:

| Employee | New Position | Date |
|---|---|---|
| Hall | sixth-level inspection supervisor | 02/01/85 |
| McCracken | sixth-level production supervisor | 03/01/85 |
| Anthony | sixth-level production supervisor | 09/01/85 |
| Brennan | sixth-level reliability engineer | 06/01/86 |
| Bitter | sixth-level reliability engineer | 01/01/87 |

2. Payne was on sick leave from August 26 to October 20, 1986. GM practices and procedures do not permit an employee to be evaluated while he or she is on leave.

Plaintiff alleges that he was denied a promotion and that the employees listed above were awarded sixth-level positions on the basis of race.

Payne's last day of work at the Fairfax plant was February 25, 1987. In late 1987, plaintiff was granted permanent disability benefits under GM's retirement program for salaried employees. The findings of Dr. Harry R. Davidson, a clinical psychologist who performed a psychological evaluation of Payne, state that the plaintiff "is an extremely depressed individual." Dr. Davidson added that Payne "experiences constant fatigue, exhaustion and nervousness" as a result of his depression. Dr. Davidson also stated that his testing results suggest that plaintiff "may be ulcer prone and/or have a tendency toward substance abuse as a means of dealing with his state of stress."[3]

Payne's treating physician and psychiatrist, Dr. Frederick Fayne, observed the following "physical findings" with regard to plaintiff: "severe anxiety and depression, liable mood swings, poor impulse controls, loose thought association, mental confusion, flat affect, [and] homicidal thoughts." Dr. Fayne also stated that Payne's symptoms and complaints included "agitation, confusion, anxiety, depression, insomnia, anorexia, temper tantrums, [and] problems relating to people at work." Plaintiff was diagnosed as having a personality disorder, major depression, and essential hypertension.[4]

## II. STANDARDS FOR SUMMARY JUDGMENT

In considering a motion for summary judgment, the court must examine all the evidence in a light most favorable to the

nonmoving party. *Barber v. General Elec. Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir. 1981). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). If the moving party does not bear the burden of proof, he must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). This burden is met when the moving party identifies those portions of the record which demonstrate the absence of material fact. *Id.* at 323, 106 S.Ct. at 2553.

Once the moving party meets these requirements, the burden shifts to the party resisting the motion, who "must set forth *specific facts* showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (emphasis added). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations of denials of his pleading." *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

## III. TITLE VII CLAIMS

Title VII prohibits discrimination by an employer "against any individual with respect to his compensation, terms, conditions, or privileges of employment ..." 42 U.S.C. § 2000e–2(a)(1) (1982). The purpose of Title VII is to secure relief to those members of a class who may be subject to

---

3. Despite the failure of plaintiff's counsel to comply with Local Rule 404, we will nonetheless consider Payne's suggestions in opposition to defendant's motion for partial summary judgment and, alternatively, plaintiff's request for the court to enter partial summary judgment in his favor sua sponte.

4. Defendant argues that Dr. Fayne's opinion is inadmissible pursuant to Magistrate Rushfelt's

Report and Recommendation. While Judge Rushfelt precluded plaintiff from offering Dr. Fayne as an expert witness on causation, he also stated that Fred Fayne, M.D., should be permitted to testify as to "any relevant facts, and to give expert testimony, limited to those opinions which are set forth in his Statement of Employee's Physician, dated February 2, 1988."

employment discrimination on the basis of race, color, religion, sex, or national origin. *Equal Employment Opportunity Comm'n v. Safeway Stores, Inc.,* 611 F.2d 795, 799 (10th Cir.), *cert. denied, Courtwright v. Equal Employment Opportunity Comm'n,* 446 U.S. 952, 100 S.Ct. 2918, 64 L.Ed.2d 809 (1979). Plaintiff's Title VII claims, which are the subject of defendant's summary judgment motion, include disparate treatment in transfers, wage increases, and performance appraisals, as well as discriminatory harassment creating a hostile environment. We will address each of Payne's contentions separately.

### A. *Disparate Treatment*

" 'Disparate treatment' ... is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex or national origin." *Coe v. Yellow Freight Sys., Inc.,* 646 F.2d 444, 445 (10th Cir.1981) (quoting *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854, 52 L.Ed.2d 396 (1977)); *Williams v. Colorado Springs, Colo., School Dist. No. 11,* 641 F.2d 835, 839 (10th Cir.1981). Proof of discriminatory motive is necessary, although it may in some situations be inferred from the mere fact of differences in treatment. *See, e.g., Int'l Bhd. of Teamsters,* 431 U.S. at 335 n. 15, 97 S.Ct. at 1854 n. 15; *Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 266 n. 14, 97 S.Ct. 555, 564 n. 14, 50 L.Ed.2d 450 (1976).

A Title VII disparate treatment action for discrimination proceeds in the following manner:

> The plaintiff first has the burden of establishing a prima facie case of employment discrimination under [the] standards set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the prima facie

case is established, the defendant must articulate a reason, using admissible evidence, to explain why "the plaintiff was rejected, or someone else preferred, for a legitimate, nondiscriminatory reason." *Texas Dep't of Community Affairs,* 450 U.S. at 254, 101 S.Ct. at 1094. If such a reason is offered, in order to prevail the plaintiff must demonstrate that the defendant's articulated reason is a mere pretext for unlawful discrimination. *Id.* at 256, 101 S.Ct. at 1095. Throughout these stages, the overall burden of persuasion remains with the plaintiff. *Id.*

*Verniero v. Air Force Academy Sch. Dist. No. 20,* 705 F.2d 388, 391 (10th Cir.1983) (quoting *Burrus v. United Tel. Co. of Kansas, Inc.,* 683 F.2d 339, 340–41 (10th Cir. 1982)).

### 1. Transfer Claim

■ In order to establish a prima facie case of disparate treatment as a result of an employer's failure to transfer, a plaintiff must demonstrate that (1) he applied for an available position; (2) he was qualified for an available position; and (3) he was rejected under circumstances which gave rise to an inference of unlawful discrimination in that his failure to be transferred or promoted is more likely than not based on considerations of impermissible factors. *Texas Dep't of Community Affairs v. Burdine, supra,* 450 U.S. at 253, 101 S.Ct. at 1093–94; *Coe v. Yellow Freight Sys., Inc., supra,* 646 F.2d at 448–49.

■ Plaintiff alleges that defendant discriminated against him in 1985 when he was not permitted to interview for a position at or transfer to GM's plant in St. Louis or GM's Hamtramck facility in Detroit. Payne identifies the positions for which he applied as "sixth-level supervisory positions." GM does not dispute that these jobs were available at the time in question. While GM's performance appraisal review indicates that plaintiff may very well be qualified for a sixth-level supervisor position[5], Payne has failed to make a prima

---

**5.** GM's performance appraisal review form indicates that Allen Payne consistently performed at

"superior" and "highly effective" levels. A summary of plaintiff's performance states as fol-

facie showing that he was rejected under circumstances that give rise to an inference of unlawful discrimination. In fact, the evidence indicates that plaintiff received preferential treatment. Although personnel at the Fairfax plant were not being released for transfer interviews because of anticipated staffing needs, plaintiff was permitted to interview at GM's Wentzville, Missouri, facility in order to be closer to his daughter in St. Louis. We will grant defendant's summary judgment motion with respect to plaintiff's Title VII claim alleging disparate treatment regarding a transfer.

### 2. Wage Increases

■ Payne alleges that he received disparate treatment from 1984 through March of 1988 with regard to annual pay increases and employee benefits. In order to establish a prima facie case of employment discrimination respecting compensation, a plaintiff must prove that he is a member of a protected class and that he was paid less than a nonmember for work requiring substantially the same responsibility. *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir.1984), *on reh'g*, 753 F.2d 369, *reh'g denied*, 760 F.2d 87 (1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 791, 88 L.Ed.2d 769 (1986); *Miller v. United States*, 603 F.Supp. 1244, 1249 (D.D.C. 1985).

■ More specifically, Payne alleges that he was treated less favorably than two white female employees, Grafton and Daugherty, with respect to the timing and the amount of his wage increases. He argues that, despite having greater seniority than Grafton and Daugherty, they received salary increases on an annual basis while his wages were only increased every eighteen months. Daugherty, as well as Payne, occupied a fifth-level position. Af-

ter carefully reviewing the facts in a light most favorable to plaintiff, we believe he has established a prima facie case of employment discrimination with regard to compensation. While Payne was awarded a merit increase one percentile greater than Grafton in 1985, Grafton received her merit increase five months prior to plaintiff, giving her close to two hundred dollars more that year. The business records of GM also indicate that both Grafton and Daugherty received greater merit increases than plaintiff in 1986.

■ Once plaintiff proves a prima facie case of discrimination, defendant GM has the burden of providing a reason to explain why someone else was preferred for a legitimate, nondiscriminatory reason. *Verniero v. Air Force Academy, supra*, 705 F.2d at 391 (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094). Although General Motors notes that Payne's salary increases were comparable and argues that plaintiff's base salary exceeds that of the two white female employees, defendant offers absolutely no explanation for its failure to increase Payne's merit pay to the same level as Grafton and Daugherty and at the same time as Grafton. We will therefore deny defendant's summary judgment motion with regard to plaintiff's Title VII claim alleging disparate treatment in wage increases.

### 3. Timely Performance Appraisals

■ Plaintiff asserts that his 1984 and 1986 performance appraisals were conducted in a discriminatory manner because he was not evaluated during the month of July in those years. Payne's annual performance appraisals were usually conducted in July. Defendant argues that Payne has forfeited the right to pursue his claim with regard to the 1984 appraisal, because this evaluation was not the subject of a

---

lows: "Payne consistently follows procedures & performs checks ... [He] [h]as a logical approach to problem solving, gets others involved, does a good job of following up, gathers accurate data as needed and uses available information accurately ... He shows initiative ... Ac-

cepts the responsibility ... Demonstrates safety awareness, complies with safety regulations relative to his own job and the product ... Has a good working relationship with ... co-workers."

timely charge of employment discrimination under section 706(e) of Title VII.[6] Section 706(e) requires a person to file charges with the EEOC within 180 days after the occurrence of an alleged unlawful employment practice. 42 U.S.C. § 2000e–5(e).[7] In the instant case, Payne did not file his EEOC charge until August 20, 1986, more than 300 days after the alleged act of discrimination in October of 1984. We will therefore grant GM's summary judgment motion with regard to plaintiff's claim of an untimely appraisal in 1984.

■ With respect to the 1986 evaluation, defendant argues that any delay was immaterial because the timing of the appraisal had no relationship to the timing of salary increases and promotions. GM's employment decisions regarding salary increases and promotions were based upon the most recent evaluation in each employee's file. GM adds that Payne was not evaluated until the month of October, in part because his supervisor, Shinn, was on a disability leave of absence from July 31 to August 18, 1986. Plaintiff's appraisal was further delayed by his own absence from August 27 to October 20, 1986. GM's practices and procedures do not permit the evaluation of an employee while he or she is on a leave of absence.[8]

We believe no inference of unlawful discrimination can be drawn from the delay in evaluating Payne's 1986 performance. GM has articulated a legitimate, nondiscriminatory reason for its failure to conduct plaintiff's appraisal during the month of July. Payne's assertion that defendant discriminated against him in the timing of the appraisal is without merit. There is no indication that GM's reason for delay is a pretext. We will therefore grant GM's summary judgment motion with regard to plaintiff's Title VII claim of disparate treatment as a result of the untimely evaluation in 1986.

**6.** 42 U.S.C. § 2000e–5.

**7.** *See Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 976–77 (11th Cir.1986) (purpose of requiring EEOC charge to be filed within 180 days after alleged unlawful practice occurred is to

## B. *Harassment Claim*

■ In the fifth paragraph of the complaint, Payne alleges that he was subjected to harassment by his supervisor. Plaintiff stated in his EEOC charge that he had been harassed by his "supervisor who made [his] work environment tense and offensive. He use[d] obscene language ... such as 'you're a Goddam liar' " and spoke harshly to him. Payne notes that the harassment continued despite his report to upper management of Shinn's behavior. He adds that "[w]hite employees [were] not subjected to this type of treatment."

■ In order to establish that he worked in a racially hostile environment, a plaintiff must prove "more than accidental or sporadic incidents of discrimination; [he] must show that 'discrimination was the company's standard operating procedure—the regular rather than the unusual practice.' " *Pitre v. W. Elec. Co., Inc.*, 843 F.2d 1262, 1267 (10th Cir.1988) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. at 336 n. 16, 97 S.Ct. at 1855 n. 16). Casual comment or conversation will not trigger equitable relief pursuant to Title VII. *Accord Rogers v. Equal Employment Opportunity Comm'n*, 454 F.2d 234, 238 (5th Cir.1971), *cert. denied*, 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972). Instead, there must be "a steady barrage of opprobrious racial comment." *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1257 (8th Cir.1981).

While Payne describes several incidents in which his supervisor, Shinn, appears to have wrongfully harassed him, he furnishes the court with only one statement by Shinn which we may infer was made with racial animus. In July of 1986, Shinn allegedly stated that "I am tired of you damn people being in here every time I come in here." With regard to this statement, Payne fails to identify who Shinn allegedly

provide notice to charged party and provide EEOC opportunity to settle grievance).

**8.** Defendant notes that evaluations are commonly delayed for various reasons. GM adds that these delays occur without regard to race or sex.

called "you damn people." Even if Shinn was referring to black GM employees, his statement is insufficient to establish that discrimination was GM's "regular practice" or "standard operating procedure" at the Fairfax plant. We will therefore grant defendant's summary judgment motion with respect to plaintiff's Title VII claim alleging harassment.

## IV. SECTION 1981 CLAIMS

In count II of the complaint, plaintiff incorporates his prior Title VII claims regarding transfers, compensation, evaluations, and promotions, and states that the same acts and omissions "constitute a violation of 42 U.S.C. § 1981 in that said acts and omissions deprived plaintiff of the right to make and enforce contracts to the full and equal benefit of all laws."

### A. *Limitations Under 42 U.S.C. § 1981*

In several of plaintiff's section 1981 claims of race discrimination, he alleges that GM wrongfully denied him promotions based upon his race, and instead promoted the following similarly situated white employees to sixth-level positions: Billie Hall, Michael McCracken, Dennis Anthony, Michelle Brennan, and Brian Bitter. Payne also alleges that he was denied the opportunity to accept a transfer involving a promotion to GM's Hamtramck facility in Detroit.

 Defendant argues that all but one of the promotions allegedly denied plaintiff are time-barred. Federal courts are required to apply the "most appropriate" statute of limitations provided by state law. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); *Brown v. Bigger*, 622 F.2d 1025, 1026 (10th Cir.1980). The applicable state statute of limitations in Kansas is two years. K.S.A. 60–513(a)(4); *see also Garcia v. Univ. of Kansas*, 702 F.2d 849, 851 (10th Cir.1983) (Kansas limitation statute most nearly describing plaintiff's cause of action is K.S.A. § 60–513). This limitation period applies to all section 1981 actions accruing after *Garcia v. Wilson*, 731 F.2d 640, 651 (10th Cir.1984), *aff'd* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

*Derstein v. Van Buren*, 828 F.2d 653, 655–56 (10th Cir.1987).

In order for plaintiff to maintain a cause of action for GM's failure to promote him, he must establish that such promotion occurred after September 22, 1986, the beginning of the two-year period prior to the filing of his complaint. Defendant's business records establish that Hall, McCracken, Anthony, and Brennan were promoted to sixth-level positions before September of 1986. The EEOC charge of discrimination form filed by plaintiff indicates that the promotion opportunity at the Hamtramck facility was offered to him in 1985. With the exception of the promotion of Bitter in January of 1987, all other promotion claims alleged to have violated 42 U.S.C. § 1981 are time-barred.

### B. *Scope of 42 U.S.C. § 1981*

 Defendant argues that any claim based on the promotion of Bitter cannot survive the effect of *Patterson v. McClean Credit Union*, — U.S. —, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). In *Patterson*, — U.S. at —, 109 S.Ct. at 2372–73, 105 L.Ed.2d at 150, the Supreme Court held that section 1981 "expressly prohibits discrimination *only* in the making and enforcement of contracts." (Emphasis added.) In emphasizing that section 1981 protection does not extend "to problems that may arise later from conditions of employment," the Court stated:

[T]he right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions. Such post-formation conduct does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment, matters more naturally governed by state contract law and Title VII.

*Id.* — U.S. at —, 109 S.Ct. at 2372–73, 105 L.Ed.2d at 150–51. Since plaintiff is alleging that section 1981 was violated by GM's conduct after formation of his employment contract, we must grant defendant's motion for summary judgment with

respect to his claims regarding compensation, transfer, and evaluation.

■ A promotion claim, however, is actionable under section 1981 if "the nature of the change in the position [would involve] the opportunity to enter into a new contract with the employer." *Id.* —— U.S. at ——, 109 S.Ct. at 2377, 105 L.Ed.2d at 156. The promotion must rise "to the level of an opportunity for a new and distinct relation between the employee and the employer." *Id.* In deciding whether a promotion would create "a new and distinct relation," Judge Posner suggests the focus of inquiry be on "whether the promotion would change the terms of the contractual relationship between the employee and the employer." *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1311 (7th Cir.1989).[9]

In plaintiff's EEOC charge, he states that he was subjected to "different terms and conditions of ... employment" as a result of GM's failure to promote him. Payne also testified that a promotion would have provided him with an opportunity to work in the paint, motor, chassis and trim "areas" of the Fairfax plant. GM's personnel director, Danahy, indicated that a promotion to a higher level involves a salary increase. Defendant contends that a promotion from a fifth-level position to a sixth-level supervisor would not change plaintiff's relationship with GM. We believe that there is a genuine issue of material fact as to whether Payne's promotion to a sixth-level position would change the terms of his contractual relationship with his employer. Accordingly, the court will deny defendant's summary judgment motion with regard to plaintiff's section 1981 claim that he was denied and Bitter was awarded a promotion on the basis of race.

## V. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

■ In the third count of plaintiff's complaint, he alleges that the "acts and omissions of defendant and its agents, officers, servants and employees establish the tort of the negligent infliction of emotional distress in that defendant was aware through its own records of the deleterious effect its acts and commissions and those of its agents were having upon plaintiff's psyche." Defendant argues that this claim must fail because there is no evidence of physical injury accompanying Payne's alleged emotional distress.

■ In order to maintain an action for emotional distress caused by the negligence of a defendant, the plaintiff's distress must result in or be accompanied by a physical injury occurring contemporaneously with or shortly after the incident causing the emotional distress. *Anderson v. Scheffler*, 242 Kan. 857, 860, 752 P.2d 667, 669 (1988); *Hopkins v. State*, 237 Kan. 601, 612–13, 702 P.2d 311, 320 (1985); *Hoard v. Shawnee Mission Medical Center*, 233 Kan. 267, 279, 662 P.2d 1214, 1221 (1983). Payne claims that the disparate treatment he received as a black employee "clearly 'resulted in' physical injury to the plaintiff." Payne also alleges he suffered "psychological trauma" as a result of the disparate treatment he received as a black GM employee.

Dr. Fayne, plaintiff's treating physician, concluded that Payne suffers from major depression. Dr. Davidson, a consultant psychologist, also found that plaintiff "is an extremely depressed individual." Dr. Davidson added that Payne "experiences constant fatigue, exhaustion and nervousness" as a result of his depression.[10] Dr. Davidson also stated that his testing suggests that Payne "may be ulcer prone and/or have a tendency toward substance abuse as a means of dealing with his state of stress." We believe that the constant "exhaustion" and "fatigue" resulting from plaintiff's depression, which was allegedly caused by defendant's discrimination, may

---

9. While Judge Posner acknowledged that *Patterson* is susceptible to more than one interpretation, he concluded that it "is clear that some in-house promotions are actionable." His interpretation of *Patterson* indicates that "a transfer to a new job" would constitute a new and distinct relation between an employer and employee. *Malhotra*, 885 F.2d at 1311.

10. "Exhaustion" is defined as the "depletion of energy stores resulting in muscle fatigue to the point where physical activity cannot be performed." 1 *Int'l Dictionary of Medicine and*

be characterized as the "physical injuries" required to maintain an action for negligent infliction of emotional distress.[11] Dr. Davidson's findings create a question of fact. The court will therefore deny the summary judgment motion of defendant and plaintiff with regard to count III of the complaint.

IT IS THEREFORE ORDERED that defendant's summary judgment motion be denied with regard to plaintiff's following claims: Title VII claim alleging disparate treatment in wage increases, section 1981 claim alleging that Payne was denied and Bitter was awarded a promotion on the basis of race, and count III alleging GM's negligent infliction of emotional distress.

IT IS FURTHER ORDERED that defendant's summary judgment motion be granted in all other respects.

IT IS FURTHER ORDERED that plaintiff's summary judgment motion be denied.

---

*Biology* 1012–13 (1986). "Fatigue" is defined as a "state of increased discomfort and decreased efficiency resulting from prolonged or excessive exertion." *Dorland's Illustrated Medical Dictionary* 543 (24th ed. 1965).

11. Dr. Fayne observed that plaintiff possesses "poor impulse controls" and noted that Payne complained of or had symptoms of insomnia. Having decided that plaintiff may maintain an action for negligent infliction of emotional distress, the court will not determine whether poor impulse control or insomnia are physical injuries.