EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff,

and

Roland Jackson, Intervening Plaintiff,

v.

SAMSONITE CORPORATION, LUG-
GAGE DIVISION, Defendant.

Civ. A. No. 80-M-458.

United States District Court,
D. Colorado.

Nov. 16, 1981.

Ralph G. Torres, Denver, Colo., Ronald W. Taoka, Lakewood, Colo., Denver Dist. Office, Equal Employment Opportunity Commission, for plaintiff (E.E.O.C.).

Wade H. Eldridge, Denver, Colo., for intervening plaintiff (Roland Jackson).

James A. Jablonski, Gorsuch, Kirgis, Campbell, Walker & Grover, and Eileen R. Lerman, Associate Gen. Counsel, Samsonite Corp., Denver, Colo., for defendant (Samsonite Corp.).

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., to redress racially disparate treatment in making promotions of bargaining unit employees to managerial positions in the defendant's warehouse. The only jurisdictional issue concerns the timeliness of the filing of the administrative charge with the Equal Employment Opportunity Commission.

Roland Jackson, a black male, was first employed by the defendant on April 3, 1961. During the following 19 years of his employment, Mr. Jackson held almost all of the bargaining unit jobs in the defendant's distribution center (warehouse). Having been clamp operator, packer, production counter, truck driver, and lead operator, the plaintiff gained full familiarity with all of the workings of the warehouse operations at the centers in Montbello and on Moline Street in Denver, Colorado.

During the time relevant to this case, Rex Glass was the director of physical distribution and traffic, responsible for making final decisions on the promotion of warehouse employees. Mr. Loren Colbert

served as the manager of distribution, functioning as the principal assistant to Mr. Glass. Clifford Lanzi served as the superintendent at the Montbello warehouse and Richard Weishaupl was the superintendent for the Moline Street warehouse. Two shifts worked at each warehouse and the superintendent was normally not present during the second shift. A supervisor (foreman) coordinated the assignments and work done on each shift, using lead operators as principal assistants.

The lead operator position required a person who could perform all of the tasks in the warehouse and take the place of any absent warehouse worker. Additionally, the lead operator had to have knowledge of the work flow and the preparation of the necessary documents. The lead operator position was different from that of the foreman only in that the latter was a management position with supervisory authority over employees while the lead operators were bargaining unit employees without such authority. The plaintiff functioned as a lead operator in both warehouses from 1973 to 1977. For some months he worked as a lead operator at the Moline warehouse without a superintendent or a supervisor.

In 1977, Roland Jackson was required to do the work of a lead operator and a truck driver. As a result of a union grievance, he was reassigned as a truck driver which is the highest paid bargaining unit job available to warehouse workers. He was still in that position at the time of the trial of this case.

David Mead, a white male, and Ed Gallegos, an hispanic male, were promoted from lead operator positions to supervisors in 1977. Neither of them had as much seniority as the plaintiff or John Pettis, another black male who had been working for the defendant since 1961.

On August 1, 1977, John Fleer, a white male, was hired from outside the company and placed in a supervisor's position. Mr. Fleer quit that job on December 1, 1978. Mr. Bernie Starkey, a white male, was offered a promotion to fill that vacancy and he declined. The defendant then advertised the position in a Denver newspaper. Roland Jackson filed a complaint with the EEOC and the Colorado Civil Rights Commission on December 22, 1978. Raymond Sproule was hired from outside the company and placed in the supervisor's position on February 1, 1979.

At all times relevant to this case, the defendant had no formal process for promotions to the position of warehouse supervisor. No job requirements for that position were established and no criteria for promotion were ever articulated. There was no posting of any vacancy and bargaining unit employees did not receive any advance knowledge of an opportunity for promotion to supervisor. The filling of the foreman's position was left completely to the discretion of Rex Glass, acting entirely on his own judgment. Mr. Glass usually accepted the recommendations of Loren Colbert and the building superintendents. That was not true on two occasions when they recommended John Pettis and Mr. Glass gave no reasons for rejecting the promotion of that black male.

█ The plaintiff has established a prima facie case of a discriminatory denial of the promotional opportunity resulting from the resignation of John Fleer on December 1, 1978. Using the analysis of *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1972), it is clear that Roland Jackson had the apparent qualifications for supervisor, that he was passed over, that the position remained open and was ultimately filled by the appointment of a white male from outside the company. The charge was clearly filed timely with respect to that particular promotional opportunity.

The defendant contends that the intervening plaintiff did not make his desire for promotion known and, therefore, his claim is not subject to the application of the *McDonnell Douglas* analysis. There is no merit to that contention. There was no opportunity for Mr. Jackson to apply for this or any other supervisor position and there is clear and uncontradicted testimony that the intervening plaintiff had previously asked why he had not been promoted.

**134**

This is a case in which there is convincing evidence of a continuing violation of Title VII by an ongoing refusal to consider Roland Jackson and John Pettis, the only two black warehouse employees, for advancement to a management position in the nearly 20 years of their employment. The case comes within the criteria discussed in *Rich v. Martin-Marietta Corp.*, 522 F.2d 333 (10th Cir. 1975).

The defendant has attempted to rebut the prima facie case by offering the testimony of Rex Glass and other management persons suggesting reasons for the failure to consider Roland Jackson for the position of supervisor when vacancies occurred. Those reasons were summarized in statements that he had a bad attitude; that he did not work well with management people and that he was not the management type. As examples of conduct which would support that view, the defendant's witnesses testified to a time in 1974 when Mr. Jackson, as lead operator, participated in a brief work stoppage to protest the working conditions in a tunnel area and an incident in January, 1977 when he damaged company property by the failure to secure the door of a truck. On the latter occasion, the discipline of a three-day suspension was taken to arbitration and the arbitrator reduced the penalty to a one-day suspension.

Perhaps most significantly, the defendant attempted to use an incident which occurred in October, 1973, when the intervening plaintiff had a verbal confrontation with two white female employees who complained that he insulted them. While Mr. Jackson denied the particular language with which he was charged, he did admit to his anger with those employees because he believed them to have been accusing him falsely of having an affair with another employee. There was no discipline given for that incident. The suggestion that this incident had any relevance to this black man's qualifications in 1978 is a strong corroboration of a finding that the intervening plaintiff was a victim of racial stereotyping.

The defendant's articulated reasons for refusing to consider Roland Jackson for a supervisory position are pretextural. The evidence taken as a whole supports the finding that because they were black, Roland Jackson and John Pettis were simply invisible to Mr. Glass. His testimony demonstrates clearly that although he may have no racial animus, he reflects a stereotype view of inadequacy of black men to perform in management positions. Accordingly, the plaintiff and plaintiff in intervention have met the burden of proof of a continuing violation of a discriminatory denial of promotional opportunity in this case.

The difficulty in this case is with the remedy. Roland Jackson does not now want to be made a supervisor because adverse economic conditions have forced a reduction in employment with the defendant. Accordingly, he has more job security as a truck driver in the bargaining unit than he would have as a supervisor. Therefore, only a backpay remedy is available.

There was a pay differential between the supervisor's pay and that of a truck driver as well as a lead operator, although a truck driver has made more money than a lead operator. Overtime availability has also been different for these positions. The question of remedy is also complicated by the issue of timeliness in the filing of the complaint with the EEOC. Should Mr. Jackson be given that pay for any period more than 180 days prior to the filing of this complaint? There is, of course, the additional matter of attorneys' fees. These questions were not adequately addressed by the parties at trial. Accordingly, counsel should now be required to file statements of their respective positions on these questions of remedy and attorneys' fees.

Upon the foregoing, it is

ORDERED AND ADJUDGED that the plaintiff and plaintiff in intervention have established a continuing violation by showing racially discriminatory treatment of the plaintiff in refusing to consider him for promotion to the position of supervisor (foreman), but that no final judgment can now be entered on this record, and it is

FURTHER ORDERED that within twenty (20) days counsel for the plaintiff, plain-

tiff in intervention and defendant shall file statements of their respective positions on the questions of remedy and attorneys' fees.