723 F.2d 748
 33 Fair Empl.Prac.Cas. 377,
32 Empl. Prac. Dec. P 33,918
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellee,
Roland Jackson, Intervening Plaintiff-Appellee,
v.
SAMSONITE CORPORATION, LUGGAGE DIVISION, Defendant-Appellant.
 No. 82-1558.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 14, 1983.
 
 James A. Jablonski of Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., for defendant-appellant.
 Justine S. Lisser, Atty., E.E.O.C., Washington, D.C. (Michael N. Martinez, Acting Gen. Counsel, Philip B. Sklover, Associate Gen. Counsel, Vella M. Fink, Asst. Gen. Counsel, and Raymond R. Baca, Atty., Washington, D.C., with her on the brief), for plaintiff-appellee E.E.O.C.
 Wade H. Eldridge, Denver, Colo., for intervening plaintiff-appellee Roland Jackson.
 Before SETH, Chief Judge, BARRETT, Circuit Judge, and BOHANON, District Judge*.
 SETH, Chief Judge.
 
 
 1
 The plaintiff is a longtime employee of Samsonite and brought this action under Title VII alleging that Samsonite discriminated against him as a black in not promoting him to Warehouse Supervisor. The case as tried only concerned back pay and attorney's fees as the plaintiff then decided he did not want the position. The trial court, 529 F.Supp. 132, found for the plaintiff and Samsonite has taken this appeal.
 
 
 2
 Some initial consideration of the Court's opinion in United States Postal Service v. Aikens, --- U.S. ----, 103 S.Ct. 1478, 75 L.Ed.2d 403, a Title VII case, should be given. That opinion treats the significance of the sequence of the evidentiary steps at trial and when, after a trial on the merits, the case has reached the Court of Appeals. Of this the Court said:
 
 
 3
 "Because this case was fully tried on the merits, it is surprising to find the parties and the Court of Appeals still addressing the question whether Aikens made out a prima facie case. We think that by framing the issue in these terms, they have unnecessarily evaded the ultimate question of discrimination vel non."
 
 
 4
 The Court in Aikens repeats the Furnco [Furnco Construction Corp. v. Waters, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978) ] admonition in the statement:
 
 
 5
 "The prima facie case method established in McDonnell Douglas [v. Green, 411 U.S. 782, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ] was 'never intended to be rigid, mechanical, or ritualistic.' "
 
 And the Court in Aikens also states:
 
 6
 "Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant."
 
 And:
 
 7
 "[W]hen the defendant fails to persuade the district court to dismiss the action for lack of a prima facie case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the fact finder must then decide whether the rejection was discriminatory within the meaning of Title VII. At this stage, the McDonnell-Burdine [Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ] presumption 'drops from the case,' id., at 255, n. 10 [101 S.Ct. at 1095, n. 10], and 'the factual inquiry proceeds to a new level of specificity.' Id., at 255 [101 S.Ct. at 1095]." (Footnote omitted.)
 
 
 8
 Thus with the response by defendant of proof as to reasons in the case before us there is no purpose in discussing the order of proof. The case reaches us as any other civil litigation.
 
 
 9
 Here all the evidence was before the trial court. It was no different from any other civil action as Aikens points out, and no special method of analysis is required. We are not concerned here with a motion to dismiss nor whether or not the proper burden of proof was placed on the plaintiff or defendant.
 
 
 10
 The plaintiff had an adequate opportunity to meet the proof of the defendant as to the validity of the reasons for not promoting him as required under Burdine. The parties here in a typical trial on the merits to the court put in proof on the issues they wished to develop.
 
 
 11
 The Court in Aikens refers to the problems in proving a state of mind. The Court of this said:
 
 
 12
 "There will seldom be 'eyewitness' testimony as to the employer's mental processes. But none of this means that trial courts or reviewing courts should treat discrimination differently from other ultimate questions of fact. Nor should they make their inquiry even more difficult by applying legal rules which were devised to govern 'the allocation of burdens and order of presentation of proof,' Burdine, supra, [450 U.S.] at 252 [101 S.Ct. at 1093], in deciding this ultimate question."
 
 
 13
 Thus the rules for the order of presentation of proof are devised for that purpose alone. They should not make more difficult the inquiry necessary to decide the ultimate fact. Nor should these rules dominate the inquiry in this case tried on the merits. So we proceed on that basis.
 
 
 14
 The record before us in this appeal demonstrates that the plaintiff had extended experience in the warehouse procedures and practices and was very familiar with them, and in loading, unloading and truck driving. He was also knowledgeable in the grievance practices under the collective bargaining agreement. He had at one time been a "lead operator" which required knowledge of the practices in the warehouse. This however was not a supervisory or managerial position. He had held no such position.
 
 
 15
 The trial court concluded plaintiff was "qualified" as warehouse supervisor on the basis of this showing of experience with the warehouse jobs, and with his seniority. This conclusion was reached without any comparison of plaintiff's qualifications with those of anyone else. The person picked for the position in question had been on the job for a considerable time before trial. As to plaintiff's qualifications for a managerial position, the evidence centered on several events and incidents in which plaintiff was involved on the job in the warehouse. These were developed in detail. This evidence was direct and specific without subjective evaluations.
 
 
 16
 One incident was a walkout by the plaintiff and several others when he was a lead operator. The complaint was that the work area was too hot. Mr. Jackson was experienced in the proper grievance procedure under the contract, and knew his action was a violation of the agreement. His immediate supervisors knew of this incident, and it was part of their evaluation of his supervisory qualifications.
 
 
 17
 Another incident concerned plaintiff's angry challenge several years before of two women employees. According to the women he cursed them, called them obscene names, and threatened them. Both women wrote letters of complaint to the company at the time in which they stated that plaintiff had called them obscene names and said if they were men he would beat them. The plaintiff in his deposition stated that the language was not obscene and that instead he stated he would "beat their ass." Plaintiff received a reprimand for this incident. His personnel file so showed and that an investigation was made. It recited that he had used obscene and threatening language to the women. He was also asked to go to the Industrial Relations Department to discuss the incident.
 
 
 18
 The supervisors were, of course, aware of the matter. They testified that this incident was considered in their evaluation of plaintiff for a promotion to the managerial position.
 
 
 19
 This threat to the women employees with the obscenities was a significant factor in plaintiff's record. The record is clear that it represented a substantial element in the refusal of the immediate supervisors, Mr. Lanzi and Mr. Colbert, to recommend the plaintiff to Mr. Glass who had the final say. That the incident took place is not denied. There is some difference in the description of the language but any version, with the element of the threat, which is not denied, is serious. The EEOC in its brief and argument would pass off the incident as of no consequence. The trial court was mistaken when it stated in its finding that there was no disciplinary action taken against plaintiff. Of this incident the trial court said that the female employees complained he insulted them and concluded:
 
 
 20
 "The suggestion that this incident had any relevance to this black man's qualifications in 1978 is a strong corroboration of a finding that the intervening plaintiff was a victim of racial stereotyping."
 
 
 21
 It is difficult to understand how consideration of the gross language and threats by plaintiff directed to other employees can be the basis for a finding that plaintiff was some sort of a victim. "Stereotyping" has no ascertainable meaning as used in the trial court's finding.
 
 
 22
 Another matter in which plaintiff was involved was damage to a truck and to a building when he did not follow proper procedures when leaving the dock. The damage is not significant but during the investigation and the grievance procedure he told several different stories as to how the damage occurred. He received a one day suspension from work for the incident. Again it is not the damage which was used in his evaluation, but the fact that his several versions caused serious doubt on his credibility. The discrepancies were referred to by the arbitrator.
 
 
 23
 After the new Warehouse Superintendent, Mr. Sproule, was on the job and plaintiff was under his supervision, Mr. Sproule told an employee he had to work some overtime. The employee went to plaintiff to ask about such work and was told that Mr. Sproule could not order such overtime. The employee left the job and was fired. There was no challenge to this proof.
 
 
 24
 There was testimony by the supervisors that Mr. Sproule was much more qualified by his experience and education for the position than was Mr. Jackson, aside from the work incidents described above.
 
 
 25
 The trial court concluded that the plaintiff was qualified for the position and this is the extent of its findings on "qualifications". The court apparently reached this conclusion on the basis of plaintiff's experience in jobs at the warehouse and his seniority as mentioned. There is no reference to the fact that the advancement was into the management category and not just a promotion to another warehouse job.
 
 
 26
 The incidents described by defendant as reasons for not promoting were not generalities but were specific, objective, and the conclusions to be drawn from them are obvious, especially the one involving the women employees. There was a management decision made based on specific facts. These were not the typical subjective views expressed on the basis of the employee's general attitudes, and were instead as objective as is possible in the evaluation of a person for any position of authority.
 
 
 27
 The trial court concluded that the reasons described by the defendant for not promoting Mr. Jackson were "pretextual". There was no finding under Burdine of "intentional discrimination." We assume this pretextual finding would be an equivalent under most circumstances.
 
 
 28
 This, of course, is a disparate treatment case. The trial court found that all blacks were ignored by Mr. Glass for managerial positions. Thus as to the fact of discrimination against the plaintiff the trial court said in the closing paragraph of its findings and conclusions:
 
 
 29
 "The defendant's articulated reasons for refusing to consider Roland Jackson for a supervisory position are pretextural. The evidence taken as a whole supports the finding that because they were black, Roland Jackson and John Pettis were simply invisible to Mr. Glass. His testimony demonstrates clearly that although he may have no racial animus, he reflects a stereotype view of inadequacy of black men to perform in management positions. Accordingly, the plaintiff and plaintiff in intervention have met the burden of proof of a continuing violation of a discriminatory denial of promotional opportunity in this case."
 
 
 30
 The trial court uses the term "stereotype view." This in our view is a term without meaning although it used to be a favorite one in the literature.
 
 
 31
 In any event, the trial court so referred to the reasons given by defendant for not promoting plaintiff. It concluded that plaintiff was "invisible" to Mr. Glass, and that Mr. Glass "reflects a stereotype view" as to blacks. "Accordingly, the plaintiff ... met the burden of proof of a continuing violation of a discriminatory denial of promotional opportunity in this case." The "accordingly" and the conclusion which follows it is based on the "stereotype," and so presents the difficulty because of the absence of meaning of the term upon which the conclusion is based.
 
 
 32
 As mentioned, the trial court found that Mr. Jackson was qualified for the position. That was the extent of the finding as no reference is made to the qualifications of the person selected. This would not seem sufficient under the authorities (especially Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207) as a basis for the trial court's decision as to whether there was intentional discrimination against Mr. Jackson. International Brotherhood of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396. We considered comparative qualifications at some length in Bauer v. Bailar, 647 F.2d 1037 (10th Cir.), and set out the standard for the use of objective and subjective evaluations. This was also done in Burrus v. United Telephone Co. of Kansas, Inc., 683 F.2d 339 (10th Cir.1982), and in Verniero v. Air Force Academy Sch. Dist. No. 20, 705 F.2d 388 (10th Cir.1983).
 
 
 33
 We must conclude from the record and findings that the trial court did not apply the correct legal standards. Thus we are unable to properly review the case.
 
 
 34
 We have serious doubts as to whether the finding of the trial court, that the reasons given by the defendant for not promoting plaintiff were pretextual, is supported by the evidence. However, in view of the disposition on matters of law we do not decide that question.
 
 
 35
 The judgment of the trial court must be reversed and the case remanded for a new trial.
 
 
 
 *
 Honorable Luther L. Bohanon, United States Senior District Judge for the Northern, Eastern and Western Districts of Oklahoma, sitting by designation