**Mary Wilson MURPHY, Plaintiff,**

v.

**Edward J. DERWINSKI, Secretary of
Veterans Affairs, Defendant.**

**Civ. A. No. 91–A–280.**

United States District Court,
D. Colorado.

Sept. 17, 1991.

Daniel F. Lynch, Denver, Colo., for plaintiff.

Stephen D. Taylor, Asst. U.S. Atty., Douglas Doane, Office of District Counsel, Veterans Admin., Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

ARRAJ, District Judge.

This Civil Rights Action, brought under the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, asserts that the United States Veterans Administration unlawfully discriminates against women by requiring that chaplains serving in Veterans Administration hospitals be ordained clergymen. Both parties have moved for summary judgment pursuant to Fed.R.Civ.P. 56. I have carefully reviewed the briefs and the exhibits submitted in this matter and conclude that oral argument would not materially assist my decision. The court has jurisdiction over the plaintiff's sexual discrimination claim under 28 U.S.C. §§ 1331, 1343.

## FACTUAL BACKGROUND

The facts in this case are not in dispute. In May of 1988, Mary Wilson Murphy, ("plaintiff" or "Murphy"), contacted the central office of the United States Veterans Administration ("VA") regarding a position as a Catholic chaplain at the VA Medical Center in Denver, Colorado. Daniel H. Winship, M.D., Associate Deputy Chief Medical Director of the VA, responded on May 20, 1988, and advised the plaintiff of the following requirements for the position:

1. One must have fulfilled the studies required by one's denomination at an approved seminary.

2. One must be ordained in one's denomination as a minister, priest or rabbi. Three years of pastoral experience is required.

3. One must be endorsed by one's denomination.

4. One must be rated by the VA Board of Excepted Service Examiners.

5. If all the above are fulfilled, then the candidate will be considered for vacancies in the VA system.

Dr. Winship added that "[u]p to this time the Roman Catholic Church authorities will not ordain women as priests and will endorse only duly ordained men for the VA Chaplaincy."[1] Nevertheless, Murphy applied for the position of Roman Catholic chaplain on June 28, 1988.

The plaintiff sought religious endorsement from the Archdiocese For The Military Services, the official ecclesiastical endorsing agency of the Catholic Church for both the United States Military and the VA. On July 19, 1988, Francis X. Roque, the Vicar General of the VA, wrote to Murphy stating that:

V.A. Regulations concerning the Selection and Appointment of Chaplains require that a Chaplain be an ordained clergy person and have three years experience after Ordination. As you know, the Catholic Church together with the Orthodox Church has an unbroken tradition based on theological reasons of ordaining only men for the priesthood. For this reason it would not be possible for the Archdiocese to endorse you as a V.A. Catholic Chaplain.... [T]he V.A. Chaplain, who is often alone in a V.A. hospital as a Catholic Chaplain, must

---

1. Agency regulations indicate that VA chaplains "advise on, administer, supervise, or perform professional work involved in a program of spiritual welfare and religious guidance for patients and their families." The VA regulations, in pertinent part, require applicants for chaplain to:

be ordained clergymen and possess current ecclesiastical endorsement from the official endorsing agencies of their faith or denomination. For the purpose of this standard,

ecclesiastical endorsement is the written official statement of competent authority that the applicant's denomination certifies to the good standing of the applicant as a regularly ordained clergyman of his denomination for the 12-month period prior to his appointment and that the individual so endorsed is, in the opinion of the endorsing body, qualified to represent his church in this specialized ministry.

have the flexibility to do all things necessary to give good pastoral care to the Catholic patients. This flexibility would include but not be limited to celebration of the Eucharist, absolving in the Sacrament of Penance and anointing the sick in the Sacrament of the Sick.

On September 15, 1988, Herbert B. Cleveland, Director of Chaplain Service for the VA, responded to the plaintiff's application. He informed her that:

The Veterans Administration Chaplain Service is returning your application because your qualifications do not meet the Veterans Administration's requirements for a chaplain. Chaplains in the Veterans Administration must be ordained and an ecclesiastical endorsement must be included with the Standard Form 171, Application for Federal Employment.

The plaintiff contacted the EEO complaining of sex discrimination by the VA. After informal attempts to resolve her grievance failed, she filed a formal EEO complaint. The EEO investigated and proposed a disposition of no discrimination. Murphy then requested a hearing with the EEOC, and on October 22, 1988, an Administrative Law Judge ("ALJ") ruled that the VA's ordination requirement was discriminatory. The ALJ found that:

Since the agency has the same ordination requirement as the Catholic Church, the agency is effectively prohibiting women from applying and being considered for Catholic chaplain positions. The evidence on its face conspicuously demonstrates that the agency's job requirement of ordination has a discriminatory impact on women.

In light of the foregoing, this administrative judge concludes that the complainant has demonstrated pretext by showing that other nondiscriminatory selection criteria would serve the agency's purpose as well. The agency can modify its requirement by requiring only ecclesiastical endorsement as a condition of employment and removing the ordination requirement.

On February 4, 1991, the Deputy Secretary of the VA, Anthony Principi, declined to follow the recommended decision of the ALJ. He concluded that the VA did not discriminate against the plaintiff on the basis of sex. Murphy filed her suit in the United States District Court on February 19, 1991, within the applicable 30 day period following the final adverse agency decision.

## DISCUSSION

The plaintiff has moved for summary judgment arguing that the VA regulation, requiring both ordination and ecclesiastical endorsement, violates the Establishment Clause of the First Amendment. The defendant has responded in opposition to the plaintiff's motion and filed a cross motion for summary judgment on the grounds that the plaintiff lacks standing, that the regulation is not violative of the Establishment Clause and that Title VII was not violated because Murphy is not otherwise qualified for a position as a VA chaplain.

■ Title 42 U.S.C. § 2000e–16 provides the exclusive judicial remedy for claims of sexual discrimination in federal employment. *Brown v. General Services Administration*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976). Section 2000e–16(a) states that "[a]ll personnel actions affecting ... applicants for employment ... in military departments ... [and] in executive agencies ... shall be made free from any discrimination based on race, color, religion, sex, or national origin."

■ Murphy is proceeding under a "disparate impact" theory of discrimination in this case. "[T]he necessary premise of the disparate impact approach is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 987, 108 S.Ct. 2777, 2785, 101 L.Ed.2d 827 (1988). To establish a *prima facie* case of disparate impact discrimination, the plain-

tiff "must show that an identifiable hiring practice 'has a substantial adverse impact on a group protected by Title VII.'" *Drake v. City of Fort Collins*, 927 F.2d 1156, 1161 (10th Cir.1991) (citations omitted); *see also Ortega v. Safeway Stores, Inc.*, 943 F.2d 1230 (10th Cir.1991). Once the plaintiff has established a *prima facie* case of disparate impact based on sex, the burden then shifts to the agency to produce evidence of the justification for the challenged practice. *Ortega*, at 1243. The employer may meet this burden by articulating a nondiscriminatory reason or by presenting a legitimate explanation for the disparate treatment. The "touchstone of this inquiry is a reasoned review of the employer's justification for his use of the challenged practice." *Ortega*, at 1244 (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 659, 109 S.Ct. 2115, 2125, 104 L.Ed.2d 733 (1989)). If the defendant is able to present such an explanation, the burden shifts back to the plaintiff, who must show that the otherwise valid explanation is merely a pretext for discrimination. *Drake*, 927 F.2d at 1160. The plaintiff may establish pretext on the employer's part by showing that other, nondiscriminatory requirements would also serve its interests, *Dothard v. Rawlinson*, 433 U.S. 321, 329, 97 S.Ct. 2720, 2726, 53 L.Ed.2d 786 (1977), or by persuading "the factfinder that 'other tests or selection devices, without a similarly undesirable [discriminatory] effect, would also serve the employer's legitimate [hiring] interest[s].'" *Ortega*, at 1244 (quoting *Wards Cove Packing Co.*, 490 U.S. at 660, 109 S.Ct. at 2126).

In this case, the VA does not dispute that the regulation in question adversely affects a protected class. The VA requires ordainment as a prerequisite for serving as a VA chaplain. The Catholic Church ordains only men as priests. This results in women being ineligible for the position on the basis of their sex. The VA's facially valid requirement results in a disparate impact.

Following the EEOC hearing, the ALJ agreed with the VA that the ordainment requirement was a "business necessity" because Catholic chaplains must be able to provide the full range of sacramental rites, which can be performed only by an ordained Catholic priest. A chaplain unable to perform these rituals would be unable to properly represent the particular denomination. The ALJ therefore concluded that the VA had met its burden of production in showing a legitimate justification. However, the ALJ also concluded that the plaintiff had "demonstrated pretext by showing that other nondiscriminatory selection criteria would serve the agency's purpose as well. The agency can modify its requirement by requiring only ecclesiastical endorsement as a condition of employment and removing the ordination requirement."

The Deputy Secretary of the VA agreed with the ALJ regarding the existence of a legitimate, necessary business purpose, but disagreed with his finding that the plaintiff had established pretext by showing that other nondiscriminatory criteria would be equally effective. The Deputy Secretary therefore issued a final agency decision of no discrimination on the basis of sex by the Veterans Administration. It is this decision that Murphy now appeals.

I agree with both the ALJ and the Deputy Secretary in concluding that the VA regulation at issue results in an adverse impact on a protected class. I also agree that the agency's interest in providing a full range of ritual services to its Catholic patients creates a legitimate purpose for requiring ordination for VA chaplains. The plaintiff has moved for summary judgment on the ground that this requirement is an unconstitutional violation of the First Amendment's Establishment Clause. Thus, she argues, even if the requirement is justifiable, it cannot be sustained from a Constitutional standpoint.

■ The Supreme Court set out the three part analysis for Establishment Clause claims twenty years ago. The statute or regulation (1) must have a secular, legislative purpose; (2) its principal or primary effect must be one that neither advances nor inhibits religion; and (3) it must not foster an excessive government entanglement with religion. *Lemon v. Kurtz-*

man, 403 U.S. 602, 612–613, 91 S.Ct. 2105, 2111–2112, 29 L.Ed.2d 745 (1971); *Roberts v. Madigan*, 921 F.2d 1047, 1053 (10th Cir. 1990). It is upon the third prong of this test, the "excessive entanglement" prohibition, that this case is focused. In discussing the excessive entanglement ramifications of state involvement with religious institutions, the Court stated that:

> The objective is to prevent, as far as possible, the intrusion of either into the precincts of the other.... [T]otal separation is not possible in an absolute sense. Some relationship between government and religious organizations is inevitable.... [T]he line of separation, far from being a 'wall,' is a blurred, indistinct, and variable barrier depending on all the circumstances of a particular relationship.

*Lemon*, 403 U.S. at 614, 91 S.Ct. at 2112.

Rather than mechanically invalidating all governmental conduct or statutes that confer benefits or give special recognition to religion in general or to one faith—as an absolutist approach would dictate—the Court has scrutinized challenged legislation or official conduct to determine whether, in reality, it establishes a religion or religious faith, or tends to do so.

*Lynch v. Donnelly*, 465 U.S. 668, 678, 104 S.Ct. 1355, 1361, 79 L.Ed.2d 604 (1984). Excessive entanglement is thus "a question of kind and degree." *Id.* at 684, 104 S.Ct. at 1365.

The military chaplaincy program has survived Constitutional challenge in the past. In *Katcoff v. Marsh*, 755 F.2d 223 (2nd Cir.1985), the Court of Appeals found that furnishing chaplains to the armed services to enable soldiers to practice the religion of their choice was not violative of the Establishment Clause. The court stated that unless the military "provided a chaplaincy it would deprive the soldier of his right under the Establishment Clause not to have religion inhibited and of his right under the Free Exercise Clause to practice his freely chosen religion." *Id.* at 234. This tension within the First Amendment was noted by Justice Brennan in his concur-

rence in *School District of Abington Township, Pennsylvania v. Schempp*, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963). He stated that "[t]here are certain practices, conceivably violative of the Establishment Clause, the striking down of which might seriously interfere with certain religious liberties also protected by the First Amendment. Provisions for churches and chaplains at military establishments for those in the armed services may afford one such example." *Id.* at 296, 83 S.Ct. at 1610 (Brennan, J., concurring) (footnotes omitted).

The parties have cited no case, nor have I discovered any, addressing the Constitutionality of the ordination requirement. In *Turner v. Parsons*, 620 F.Supp. 138 (E.D.Pa.1985), *aff'd without opinion*, 787 F.2d 584 (3rd Cir.), *cert. denied*, 476 U.S. 1160, 106 S.Ct. 2280, 90 L.Ed.2d 722 (1986), the district court granted summary judgment against an ordained priest asserting an Establishment Clause challenge to the VA's ecclesiastical endorsement requirement. The court concluded that excessive entanglement would be present in the case only if the court attempted to "dictate who may or may not represent a religious faith to its flock." *Id.* at 142. I reach a similar conclusion with respect to the ordination requirement.

In *Lemon* the Supreme Court directed an examination into "the character and purposes of the institutions that are benefitted, the nature of the aid that the State provides, and the resulting relationship between the government and the religious authority." *Lemon*, 403 U.S. at 615, 91 S.Ct. at 2112. The ordination requirement bestows no benefit on any particular religious sect or on religious organizations in general. The VA provides no aid to religion, financial or otherwise. Applicants for the position of VA chaplain are either ordained or they or not; the VA does not inquire into the basis of that determination. The VA does not perform the ordainment nor involve itself with any of the theological doctrines or practices of the church. The VA is not involved in the operation or administration of any religion and has no

ongoing, day to day interaction with the church. The relationship between the VA and, in this case, the Catholic Church does not amount to excessive entanglement violative of the First Amendment, and the plaintiffs motion for summary judgment on this ground is *DENIED*.

■ The VA has moved for summary judgment on three grounds. I have already disposed of the Establishment Clause aspect of their motion in their favor, and return now to the remaining two aspects. The VA argues that the plaintiff does not have standing to bring this suit and that under Title VII, her suit must be dismissed because she is not otherwise qualified for the position of VA chaplain. The VA's argument based on standing asserts that because she would not be endorsed by the Catholic Church for a chaplaincy position, any discrimination on the part of the VA can cause her no injury. The VA argues that there is no causal connection between the challenged regulation and her injury. It is the Roman Catholic Church, which presently does not ordain women, not the VA regulation, which prevents her from becoming a Catholic chaplain.

The third aspect of the VA's motion argues that the plaintiff must be qualified for the position applied for to prove a *prima facie* case of sex discrimination under Title VII. The VA argues that because the Roman Catholic Church would never endorse the plaintiff, she is not "qualified" for the position, and thus her cause of action should be dismissed.

I disagree with both of these arguments for the same reason. Courts should not put themselves in the position of predicting what a church or religious group will do when presented with a new or unfamiliar situation. Francis X. Roque, the Vicar General of the VA, testified at the plaintiff's EEOC hearing. He was asked:

Q. And in the event that there were no VA regulation requiring that a person

be ordained as a priest in order to serve as Catholic chaplain, it would be possible for the church to consider whether or not to allow such persons to serve in the office of Veterans Administration jobs; is that not correct?

A. It would be possible.

Transcript of EEOC Hearing, Volume I at 18. The VA's attorney then asked Bishop Roque the following question:

Q. In light of the fact that the VA is only intending to provide a full range of services to Catholic veterans who are in VA hospital, would the church recognize anyone other than a Catholic priest to do those full range of services?

A. I would say no. And I cannot say that would never be different in other circumstances, but in our present circumstances I would say—in our foreseeable circumstances I would say no.

*Id.* at 19. I refuse to forecast what the Catholic church might decide to do with respect to the endorsement of women as VA chaplains.

I therefore *DENY* the defendant's motion for summary judgment except to the extent it pertains to the Establishment Clause.

Having determined that the purpose of the VA's ordination requirement is legitimate, I must next determine if the regulation is merely pretextual because of the existence of other nondiscriminatory means of achieving the VA's objectives.[2] The ALJ concluded that the requirement was pretextual and the VA vigorously disagrees.

■ The VA asserts that if ordination were not required, it would not be able to accommodate the needs of its patients by providing the full range of religious services. VA chaplains must be able to administer the various sacraments, and only ordained priests are qualified for these duties. However, the VA can achieve this goal without discriminating against wom-

---

**2.** The plaintiff has moved for summary judgment based on the Establishment Clause; however, her complaint is one for sexual discrimination under Title VII. The VA has briefed this case on all issues in its motion for summary judgment. All material facts are before me. I therefore find the case ready for decision and will treat her motion as one for summary judgment on the merits of her Title VII claim.

en. The Archdiocese of the Military is the official ecclesiastical endorsing agency of the Catholic Church. If the Roman Catholic Church chooses not to ordain women, or to endorse them, the Constitution does not allow the courts to intervene. But by removing the ordination requirement and requiring only ecclesiastical endorsement, the VA can ensure that its patients receive the religious services that the Catholic Church deems sufficient. The VA must rely on the church to determine the appropriate requirements for endorsement; once the church endorses a candidate and assures the VA that an applicant is in good standing, the VA need go no further. In this fashion, the VA can hire chaplains without discriminating against women on the basis of sex and accommodate the religious needs of its patients.

I find that the VA's purpose in enacting the ordination regulation was pretextual, and that another, nondiscriminatory means exists to serve its hiring interests. I therefore *GRANT* judgment in favor of the plaintiff on her claim of sex discrimination under Title VII.

## CONCLUSION

There are no genuine issues of material fact remaining in this lawsuit, and the plaintiff is entitled to judgment as a matter of law. It is therefore ORDERED AS FOLLOWS:

1. The plaintiff's motion for summary judgment on the Establishment Clause is DENIED.

2. The defendant's motion for summary judgment is DENIED except as it relates to the Establishment Clause.

3. Judgment is GRANTED in favor of the plaintiff on her claim of sex discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

4. The plaintiff was authorized by the court to proceed without payment of fees and costs, and, therefore, no costs will be assessed.

5. Plaintiff's counsel may file a motion for attorney's fees with supporting data within ten days from the date of this order.

The clerk is directed to enter judgment in favor of the plaintiff, Mary Wilson Murphy, and against the defendant, Edward J. Derwinski, Secretary of Veterans Affairs, in accordance with this order.

## SUPPLEMENTARY MEMORANDUM OPINION AND ORDER

Following my September 17, 1991, Memorandum Opinion and Order finding discrimination against the plaintiff on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, the plaintiff filed a Motion For Modification of Judgment. The plaintiff has also filed a motion for attorney fees and costs. A hearing was held October 3, 1991, at which time I issued a ruling from the bench. I now reduce that ruling to written form and, to the extent necessary, clarify my earlier decision.

I based my previous decision on the VA's pretextual purpose in requiring both ordination and ecclesiastical endorsement for the position of VA chaplain. In her complaint, the plaintiff requested:

> declaratory relief that the VA requirement of ordination, in addition to endorsement, violates Title VII, 42 USC 2000e, *et seq.*, and for an order requiring the VA to process her application and to allow her to seek the endorsement of the proper authorities of her faith without the federally imposed requirement of ordination; and for back pay and benefits for the term of what would otherwise have been her employment as a VA Roman Catholic chaplain; for attorneys fees, costs; and for such other relief as may be available pursuant to law.

The plaintiff now requests that I issue an order:

> requiring the VA to process her application, and to allow her to seek the endorsement of the proper authorities of her faith without the federally imposed requirement of ordination; and for an award of back pay and benefits from and after the date of the VA letter of refusal to accept her application until the date of

her employment as VA Roman Catholic chaplain, less any amounts which she has earned in other employment or endeavors.

Title 42 U.S.C. § 2000e–16 governs claims of sexual discrimination in federal employment. Section 2000e–16(d) states that the "provisions of 2000e–5(f) through (k) of this title, as applicable, shall govern civil actions brought hereunder." Section 2000e–5(g) states that a court, upon finding that an employer has engaged in an unlawful employment practice "may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, ... hiring of employees, with or without back pay ..., or any other equitable relief as the court deems appropriate."

I have already declared that the ordination requirement violates Title VII. The plaintiff may again seek the ecclesiastical endorsement of the Roman Catholic Church; however, without that endorsement, the VA is not required to hire her as a chaplain. An award of back pay and benefits at this time would therefore not be appropriate.

The plaintiff has additionally filed a Motion For Attorney Fees And Costs. Her attorney has submitted a detailed hourly statement of the services that he provided and requested an hourly fee of $150. I have reviewed this request and the statement of services and find them to be reasonable. I therefore grant the plaintiff's motion for attorney fees in the amount of $4,455.[1]

It is therefore ORDERED as follows:

1. The VA will remove the ordination requirement from its regulations, and the plaintiff, Mary Wilson Murphy, is free to seek ecclesiastical endorsement from the Roman Catholic Church and apply again for the position of VA chaplain.

2. The plaintiff's motion to modify the judgment and have this court award her back pay and benefits is *DENIED*.

3. The plaintiff's motion for attorney's fees is *GRANTED* and the defendant, Edward J. Derwinski, Secretary of Veterans Affairs, will pay to the plaintiff $4,455 to cover her attorney's fees in this action.

---

1. As stated in my previous order, costs will not be awarded as they were waived upon the plain-

tiff's submission of an affidavit of indigence.