Gloria Jean BLONG, Plaintiff,

v.

SECRETARY OF the ARMY, Togo D. West, Jr., Major General James F. Rueger and Richard E. Cordwell, Defendants.

Civ. A. No. 93–4147–DES.

United States District Court,
D. Kansas.

Feb. 28, 1995.

Alan V. Johnson, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, for plaintiff Gloria Jean Blong.

Jackie A. Rapstine, Office of U.S. Atty., Topeka, KS, for defendant John W. Shannon, Secretary of the Army.

David D. Plinsky, Office of City Atty., City of Topeka, John J. Knoll, Office of Atty. Gen., Topeka, KS, for defendants James F. Rueger, Major Gen., and Richard E. Cordwell.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

### I. INTRODUCTION

This matter is before the court on Major General James F. Rueger and Chief Warrant Officer Richard E. Cordwell's motions to be dropped as defendants pursuant to Federal Rule of Civil Procedure 21 (Doc. 47) and to dismiss or, in the alternative, for summary judgment (Doc. 66) and the Secretary of the Army's ("Secretary") motion for summary judgment (Doc. 64).

Plaintiff brings this action alleging defendants unlawfully discriminated against her under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, by refusing to hire her because of her sex. The court has reviewed the factual and legal memoranda submitted by the parties, as well as the relevant law, and is now ready to rule.

### II. RUEGER AND CORDWELL'S MOTION PURSUANT TO FED.R.CIV.P. 21

█ Rueger and Cordwell argue they are improper party defendants and should be dropped pursuant to Fed.R.Civ.P. 21.[1] Specifically, they argue as follows: plaintiff applied for a federal job; 42 U.S.C. § 2000e–16 governs actions contesting the employment practices of the federal government; § 2000e–16(c) authorizes suit against only the head of the department, agency, or unit with which plaintiff sought employment; the Secretary is the head of the relevant govern-

---

1. "The remedy available to improper parties is a motion to be dropped from the case, as provided by Rule 21...." *Ziegler v. Akin,* 261 F.2d 88, 91 (10th Cir.1958). In pertinent part, Rule 21 provides as follows: "[p]arties may be dropped ... by order of the court on motion of any party ... at any stage of the action and on such terms as are just."

mental department; therefore, § 2000e–16(c) authorizes suit against only the Secretary.[2]

On April 27, 1991, plaintiff applied for the "competitive" technician position of Supply Clerk (Typing) with the United States Property and Fiscal Office ("USP-FO"), Kansas Army National Guard ("KANG"). The position was federal. 32 U.S.C. § 709(c). Title 42, § 2000e–16, United States Code, provides the exclusive remedy for claims of sexual discrimination in federal employment. *Brown v. General Services Administration*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976); *Murphy v. Derwinski*, 776 F.Supp. 1466, 1469 (D.Colo.1991), *aff'd* 990 F.2d 540 (10th Cir.1993).[3] In pertinent part, § 2000e–16(a) provides as follows: "[a]ll personnel actions affecting ... applicants for employment ... in military departments as defined in section 102 of Title 5, ... shall be made free from any discrimination based on ... sex...." 42 U.S.C. § 2000e–16(a).[4] Section 2000e–16(c) authorizes an aggrieved applicant to bring a civil action against the government. 42 U.S.C. § 2000e–16(c). More specifically, § 2000e–16(c) authorizes the applicant to "file a civil action ... in which ... the head of the department, agency, or unit ... shall be *the* defendant." *Id.* (Emphasis added). Therefore, the only proper defendant in such an action is the head of the department, agency, or unit with which the applicant sought employment. *See, e.g., Canino v. United States E.E.O.C.*, 707 F.2d 468, 472 (11th Cir.1983); *Hall v. Small Business Admin.*, 695 F.2d 175, 180 (5th Cir.1983); *Beth v. Espy*, 854 F.Supp. 735, 738 (D.Kan.1994) (citing *Meiri v. Dacon*, 607 F.Supp. 22, 23 (S.D.N.Y.1984), *aff'd*, 759 F.2d 989 (5th Cir.), *cert. denied* 474 U.S. 829, 106 S.Ct. 91, 88

L.Ed.2d 74 (1985)). *See also Brezovski v. U.S. Postal Service*, 905 F.2d 334, 335 (10th Cir.1990) (noting in dictum that "[p]ursuant to 42 U.S.C. § 2000e–16(c) ... the head of the agency ... [is] the only proper defendant"); *Romain v. Shear*, 799 F.2d 1416, 1419 (9th Cir.1986) (referring to, and discussing, § 2000e–16(c) in an Age Discrimination in Employment Act case), *cert. denied*, 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 840 (1987).

Plaintiff seems to argue Rueger is a proper defendant because he is the Adjutant General of the KANG and, as such, is the head of a federal "agency." "An 'agency' is an 'executive agency' defined as 'an Executive department, a Government corporation, [or] an independent establishment.' " *Johnston v. Horne*, 875 F.2d 1415, 1420 (9th Cir. 1989), *overruled on other grounds, Williams–Scaife v. Department of Defense Dep. Schools*, 925 F.2d 346, 348 n. 4 (9th Cir.1991) (recognizing recent Supreme Court authority changing the Ninth Circuit's approach to equitable tolling of 42 U.S.C. § 2000e–16 actions). An "Executive department" is one of the fourteen cabinet-level departments. 5 U.S.C. § 101. A "Government corporation" is a corporation owned or controlled by the United States Government. 5 U.S.C. § 103. An "independent establishment" is either the General Accounting Office or an establishment in the executive branch that is not a military department. 5 U.S.C. § 104. The KANG is not an "Executive department," "Government corporation," or "independent establishment." Plaintiff points to no other "Executive department," "Government corporation," or "independent establishment" of which the Adjutant General is head.[5] Thus,

---

2. The Secretary joins Rueger and Cordwell's motion. *See* Secretary's Notice of Supplemental Authority (Doc. 83), filed July 29, 1994, at p. 3 (stating that "[t]his Title VII action, which is brought by the plaintiff, as an applicant for a federal, not state, job with the United States Army can proceed only against the head of the United States Army. Plaintiff's action cannot proceed against the individuals, James Rueger and Richard Cordwell").

3. Title 42, § 2000e–2(a), United States Code, makes it illegal for an "employer" to fail to hire an individual because of the individual's sex.

However, section 2000e(b) excludes the United States from the definition of "employer" as used in § 2000e–2(a). 42 U.S.C. § 2000e(b).

4. Title 5, § 102, United States Code, defines military departments to include the Department of the Army.

5. The Tenth Circuit has acknowledged that, because of his capacity as administrator of federal personnel, the Adjutant General may be considered an agent of the United States for the purposes of Federal Rule of Appellate Procedure 4. *Costner v. Oklahoma Army National Guard*, 833

Major General Rueger is not a proper defendant. *James v. Day*, 646 F.Supp. 239, 240–41 (D.Me.1986). *See also Lopez v. Louisiana Nat. Guard*, 733 F.Supp. 1059, 1065 n. 10 (E.D.La.) (questioning, but not deciding, whether the Chief of the National Guard Bureau, was the proper defendant and dismissing on other grounds), *aff'd*, 917 F.2d 561 (5th Cir.1990). *Cf. Honeycutt v. Long*, 861 F.2d 1346, 1349 (5th Cir.1988) (holding that since the Army and Air Force Exchange Service ("AAFES") is not an "agency," and since, therefore, the Commander of the AAFES is not the head of an "agency," the proper defendant was either the Secretary of Defense or the Secretaries of the Army and the Air Force jointly); *Hancock v. Egger*, 848 F.2d 87, 88–89 (6th Cir.1988) (holding Internal Revenue Service ("IRS") is not a "department," "agency," or "unit"; therefore, Commissioner of the IRS is not a proper defendant). *But cf. Taylor v. Jones*, 653 F.2d 1193, 1206–07 (8th Cir.1981).

Similarly, Cordwell's authority as hiring officer and role as interviewer do not make him the head of a federal department, agency, or unit. Thus, Cordwell is not a proper defendant. *See Soto v. U.S. Postal Service*, 905 F.2d 537, 539 (1st Cir.1990) (explaining that the only proper defendant is the Postmaster General and the court should dismiss claims against all other defendants, including local supervisors), *cert. denied*, 498 U.S. 1027, 111 S.Ct. 679, 112 L.Ed.2d 671 (1991); *Hall*, 695 F.2d at 180 (noting that there is no cause of action under § 2000e–16(c) against the SBA, its regional director, or its district director; instead, the Administrator of the SBA is the only proper defendant); *Rys v. United States Postal Service*, 702 F.Supp. 945, 947 (D.Mass.) (dismissing entire case where plaintiff sued only Postal Service and local postal employees), *aff'd*, 886 F.2d 443 (1st Cir.1989); *Person v. United States Dept. of Agriculture*, 593 F.Supp. 1054, 1059

(E.D.Wis.1984) (stating that "[t]he proper party defendant is the pertinent agency head, not his or her various employees or the agency itself").

Rueger and Cordwell's motion to be dropped as defendants is granted.[6]

### III. *SECRETARY'S MOTION FOR SUMMARY JUDGMENT*

The Secretary moves for summary judgment arguing plaintiff is unable to raise a genuine issue of unlawful discrimination and, alternatively, her claim is barred as a matter of law.

### A. *Summary Judgment Standards*

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law identifies which issues are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos National Laboratory*, 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by

---

F.2d 905, 907 (10th Cir.1987). It does not follow, however, that the Adjutant General is the head of an "agency" within the meaning of § 2000e–16(c)—that is, as defined by 5 U.S.C. § 105.

**6.** The court is aware that the Tenth Circuit has affirmed at least one Title VII judgment where the Adjutant General was the named defendant. *Thornton v. Coffey*, 618 F.2d 686 (10th Cir.1980).

However, the question presented in the instant case was not before the *Thornton* panel and the panel did not address it. To the extent plaintiff presents *Thornton* as binding Tenth Circuit authority, the court disagrees finding it more akin to obiter dictum. The court can find no case in which the Tenth Circuit addressed the question presented here.

'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the [nonmovant's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. at 2552–2553. Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or the depositions, answers to the interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (interpreting Rule 56(e)).

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–2511. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. at 2511.

**B.** *Factual Background*

For the purposes of the Secretary's motion for summary judgment, the following facts are either uncontroverted or construed in the light most favorable to plaintiff.

Technician positions with the National Guard are designated either "competitive" or "excepted." A "competitive" position does not require concurrent military membership in the National Guard; however, an "excepted" position does. On April 10, 1991, in Announcement No. 056, the KANG published an opening for a Supply Clerk (Typing) GS-04 in the USPFO. The position was "competitive." It became available in March of 1991 when the previous clerk, Daniel Piper, was promoted.

Announcement No. 056 identified Master Sergeant ("MSG") Robert D. Bottom, Warehouse Worker Foreman, as the selecting supervisor. The Announcement explained that "ONLY THE EXPERIENCE AND QUALIFICATIONS YOU SHOW ON THE STANDARD FORM 171 CAN BE USED TO EVALUATE YOUR QUALIFICATIONS FOR THIS POSITION." It also cautioned applicants that they should "CAREFULLY READ AND COMPLY WITH INSTRUCTIONS CONTAINED ON THE STANDARD FORM 171 AND THIS JOB ANNOUNCEMENT SO THAT YOU INCLUDE ALL INFORMATION REQUIRED." It set forth the position's qualifications as follows:

> **QUALIFICATIONS:** As reflected in U.S. Office of Personnel Management Handbook X–118: Applicants must have the kind and length of experience as follows:

> **GENERAL EXPERIENCE:** Application must indicate 1 year of general experience which is clerical or office work of any kind which has demonstrated the ability to perform satisfactorily at the grade level of the position.

> **SPECIALIZED EXPERIENCE:** Application must indicate 2 years of specialized experience which is supply work or closely related activities: (a) which has required the applicant to acquire and apply knowledge of the rules, regulations, procedures, and program requirements of one or more areas of a supply system; and (b) which has demonstrated the applicant's ability to perform at the level of the position to be filled.

On April 16, 1991, plaintiff submitted a Standard Form 171 ("SF 171") in response to Announcement No. 056. Linda Rein, Personnel Staffing Specialist for the KANG, determined plaintiff possessed the basic qualifications set forth in the Announcement. In addition to plaintiff, three other individuals

submitted SF 171s. However, none of these individuals met the basic requirements.[7]

Ms. Rein sent MSG Bottom a memorandum requesting him to interview "each qualified applicant listed." Plaintiff was the only applicant listed as qualified. MSG Bottom personally contacted plaintiff May 13, 1991, to schedule an interview May 15, 1991, at 1:00 p.m. At the time, however, MSG Bottom had been a supervisor only five months and was very busy preparing for deployment. As a result, Chief Warrant Officer ("CWO") Cordwell offered to conduct the interview. MSG Bottom accepted.

In May of 1991, CWO Cordwell was the USPFO warehouse supervisor. He had been the supervisor since 1990 and was the assistant warehouse supervisor between 1983 and 1990.[8] Both supervisory positions required him to participate actively in the hiring and firing of warehouse employees. Although those in the chain-of-command above him had to approve his employment decisions, as a practical matter, CWO Cordwell decided whether to hire or fire warehouse employees. In May of 1991, there were 14 warehouse employees—including CWO Cordwell—of which only one was female.

Prior to interviewing plaintiff, CWO Cordwell contacted Ms. Rein to inform her of his intention to substitute himself for MSG Bottom and make sure the switch was allowed. Ms. Rein informed him he could conduct the interview even though he was not identified as the supervising official. He then reviewed plaintiff's application packet and prepared notes to refer to during the interview. He also contacted Ron Kassebaum and Duane Stephenson, although neither were listed by plaintiff as references, to inquire about her. Mr. Kassebaum was the Stock Control Supervisor. Plaintiff had applied for various positions in his area. He had more negative than positive comments about her. Mr. Stephenson was a Supply Sergeant with plaintiff's unit in the KANG. He provided no relevant information. CWO Cordwell did not attempt to contact any of the individuals plaintiff listed as references.

Plaintiff's interview lasted 30 or 40 minutes. During the interview, CWO Cordwell provided general information about matters such as insurance, sick leave, annual leave, "comp time," and flex time. He informed plaintiff she would be required to attend computer training even though she had experience working with computers. He also described the basic job duties, but did not ask about her previous work experience. Plaintiff provided him material to supplement her SF 171.[9] He accepted and reviewed the supplementary material even though regulations allowed him to disregard information not included in an applicant's SF 171. The interview concluded with a tour of the warehouse job site.

After consulting with MSG Bottom, CWO Cordwell decided not to select plaintiff. CWO Cordwell testified in his deposition that he did not select plaintiff because he felt she was only minimally qualified and he wanted to reannounce the position to obtain a larger pool of qualified applicants. Specifically, he stated as follows:

> [w]e wanted a larger pool to select from because we're there, both of us, to hire the best person for the job, not someone that's got minimal qualifications, you know, if there's somebody better, that's who we want because we want the best person we can get in that position or any position.[10]

On March 17, 1991, CWO Cordwell sent plaintiff a standard form letter advising her she had not been selected and inviting her to apply for future openings. The letter did not inform her the position was being rean-

---

**7.** Although they failed to meet the basic requirements, it still is unclear whether any of the three individuals were "qualified." For example, their exclusion from further consideration may have been due only to their failure to comply with any of the Announcement's technical requirements.

**8.** MSG Bottom was the assistant warehouse foreman when plaintiff applied. Any decision he would have made regarding plaintiff's employment would have had to have been approved by CWO Cordwell as well as those in the chain-of-command above Cordwell.

**9.** The information consisted of a Non–Commissioned Officer rating and a letter of recommendation. Both were very favorable.

**10.** When he referred to "we," he meant himself and MSG Bottom.

nounced in order to obtain a larger pool of qualified applicants. On at least one other occasion where plaintiff had not been selected for an announced position with the USP-FO, she was informed in the letter advising of her non-selection that the position was being reannounced to obtain a larger applicant pool.

The KANG's Merit Placement/Promotion Plan allows "management" to "expand the area of consideration for a particular placement action when it has been determined that the initial area did not produce a sufficient number of qualified candidates." However, neither the Merit Placement/Promotion Plan nor the KANG's policies require a selecting supervisor to reannounce a position when the pool of qualified applicants consists of a single person. Whether to reannounce is discretionary. CWO Cordwell can recall no other situation where he recommended a position be reannounced to obtain a larger pool of qualified applicants. He chose Mr. Piper, the person who previously filled the position at issue, from an applicant pool consisting of only two qualified individuals; both of whom were male.

The Supply Clerk (Typing) position was reannounced May 29, 1991, in Announcement No. 084, as an "excepted" position with basic qualifications different from those set forth in Announcement No. 056. Specifically, Announcement No. 084 required applicants to have the following qualifications:

### QUALIFICATIONS:

*GENERAL EXPERIENCE:* Experience in clerical or office work such as maintaining records, screening, reviewing, and verifying documents; searching for and compiling information and data; or work involved in the physical handling of supplies and equipment, provided this gave the candidate some general knowledge of supply

transactions and regulations, procedures, identification codes, etc.

*SPECIALIZED EXPERIENCE:* Application must indicate 3 months experience and/or appropriate training in supply work or closely related activities in which the applicant has acquired and applied knowledge of the rules, regulations, procedures and program requirements of one or more areas of a supply system and which demonstrated the applicant's ability to perform at the level of the position to be filled.

Six individuals applied for the "excepted" Supply Clerk (Typing) position. Plaintiff was not one of the six. Neither she nor any of the other applicants for the previously announced "competitive" position were notified personally the position was being reannounced. Of the six applicants, five were rated "qualified" and one "unqualified." Of the five "qualified" applicants, three were male and two female. MSG Bottom interviewed each "qualified" applicant. He selected a female, JoAnn Call, as the best qualified. CWO Cordwell and Colonel Eldon Johnson, Cordwell's supervisor, approved Ms. Call. Subsequently, Ms. Call was appointed to the position. However, Ms. Call was not selected until July 29, 1991, slightly more than one month after plaintiff filed her formal complaint of sex-based discrimination.[11]

Plaintiff applied for a "number" of positions with the KANG. Her applications "usually" were in response to posted announcements. For example, she learned of the Supply Clerk (Typing) position by seeing Announcement No. 056 on a bulletin board at the KANG. She does not know if she ever examined the bulletin board during the time the "excepted" Supply Clerk (Typing) position was open. Nor does she know if she was looking for a job then; indeed, during this period she may have been working at the

11. The Secretary disputes plaintiff's characterization of July 29, 1991, as the date Ms. Call was selected for the position. The Secretary contends, instead, that July 29, 1991, is merely the day on which Ms. Call began her employment and the date of selection is earlier. The Secretary points to an employment roster to establish his contention; however, when read in the light most favorable to plaintiff, the exhibit does not

reflect a difference in the dates. More importantly, the Secretary does not show that the actual date of Ms. Call's selection is prior to the date plaintiff filed her formal complaint. Because the court must draw all reasonable inferences in favor of plaintiff, the court finds that, for the purposes of the Secretary's motion for summary judgment, July 27, 1991, is the date Ms. Call was selected.

KANG on a daily basis.[12] Nevertheless, she apparently learned of the reannouncement during a conversation with Ms. Rein. On Ms. Rein's suggestion, plaintiff telephoned CWO Cordwell who told her that (1) the "competitive" position was not filled because the pool of "qualified" applicants was too small and (2) the "excepted" position still was open. Plaintiff told Ms. Rein and the EEO Counselor that she was not interested in an "excepted" position.

### C. *Discussion*

 Plaintiff proceeds on a disparate treatment theory. That is, she contends the Secretary treated her less favorably than others because of her sex. In a disparate treatment case, "[p]roof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). Plaintiff has the ultimate burden of proving intentional discrimination. She may carry this burden by presenting either direct or indirect evidence of the Secretary's discriminatory intent. *Torre v. Federated Mutual Ins. Co.*, 854 F.Supp. 790, 803 (D.Kan.1994). She has presented no direct evidence; instead, she relies solely on indirect evidence.

In *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Supreme Court provided a framework organizing the parties' respective burdens where the plaintiff relies on indirect evidence to establish intentional discrimination. In *Burdine*, the Supreme Court set forth the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate,

nondiscriminatory reason for the employee's rejection." [Citation omitted]. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. [Citation omitted].

*Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093.

The Secretary argues as follows: (1) plaintiff cannot establish a prima facie case of unlawful discrimination; (2) plaintiff cannot rebut the proffered nondiscriminatory reasons for refusing to hire her; and (3) after-acquired evidence of bad conduct bars plaintiff's action.

### 1. *Prima Facie Case*

 To establish a prima facie case of discriminatory refusal to hire, plaintiff must show the following: (1) that she is a member of a protected class; (2) that she applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite her qualifications, she was rejected; and (4) that, after her rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. It is uncontroverted that plaintiff is a female, she applied for a job for which she was qualified, she was not hired, and the position was reannounced. In fact, viewing the evidence in the light most favorable to plaintiff, it appears the reannounced position invited applicants who were less qualified than plaintiff. Nevertheless, the Secretary argues plaintiff is unable to establish a prima facie case because the reannounced position was given to another female.

In *Weber v. United Parcel Service, Inc. et al.*, 1993 WL 245969 (D.Kan.), Judge Monti Belot held that a female employee was unable to establish a prima facie case of unlawful sex-based termination because the defendant filled her position with another female

---

**12.** She did see Announcement No. 084 on the bulletin board until the position already had been filled.

employee. 1993 WL 245969, at pp. *4–5. The rationale underlying *Weber* is that hiring an individual within a plaintiff's protected class is strong evidence that discriminatory animus was absent from the challenged employment decision. So strong, in fact, as to preclude the existence of a genuine issue of unlawful motive. *But see Jackson v. Richards Medical Co.*, 961 F.2d 575, 587 n. 12 (6th Cir.1992) (noting replacement with member of protected class does not preclude plaintiff from making prima facie showing); *Walker v. St. Anthony's Medical Center*, 881 F.2d 554, 558 (8th Cir.1989) (stating that "it is entirely conceivable that a woman discharged and eventually replaced by another woman may be able to establish that she was the object of impermissible discrimination related to her gender"); *Brooks v. Hilton Casinos, Inc.*, 714 F.Supp. 1115, 1118 (D.Nev. 1989) (stating that it is unnecessary to show replacement by person outside the protected class to make a prima facie case and concluding that this view is "widely held"); *Giannotti v. Foundry Cafe*, 582 F.Supp. 503, 506 (D.Conn.1984) (writing that "[t]he gender of the employee who replaces a discharged Title VII plaintiff pertains to weight of evidence rather than to legal sufficiency"). *But cf. Pitre v. Western Elec. Co. Inc.*, 843 F.2d 1262, 1272 (10th Cir.1988) (noting in dictum "that a member of a protected class was hired or promoted in place of a Title VII plaintiff has repeatedly been held insufficient to insulate the employer from liability").

■ It is unnecessary either to adopt or reject *Weber* because its reasoning does not apply to the facts of the instant case. The Secretary contends that the hiring of Ms. Call is unassailable proof his earlier decision not to hire plaintiff was made without discriminatory animus. However, the Secretary hired Ms. Call only after plaintiff filed her formal complaint of discrimination. The timing of the Secretary's selection of Ms. Call is critical. Her selection could have been an initial step in the defense of plaintiff's suit. As such it loses much of its force as an accurate indicator of the purity of defendant's motive; particularly here since prior to Ms. Call's selection the USPFO warehouse had only one female employee out of fourteen. The burden of establishing a prima

facie case is not onerous. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093–1094. Ms. Call's selection does not defeat plaintiff's ability to raise a genuine issue of unlawful discrimination at the first step of the framework.

## 2. *Nondiscriminatory Reasons*

■ Because plaintiff establishes at least a genuine issue of discrimination at step one, the burden of production shifts to the Secretary " 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' " *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824). The Secretary's explanation of its legitimate reasons must be "clear and reasonably specific" so that plaintiff is afforded a " 'full and fair opportunity' " to demonstrate pretext. *Id.* 450 U.S. at 258, 101 S.Ct. at 1096. For example, " '[g]eneral assertions of good faith or of hiring only the best applicants . . . are insufficient.' " *Pitre*, 843 F.2d at 1266 (quoting *Payne v. Travenol Laboratories, Inc.*, 673 F.2d 798, 817 (5th Cir.), *cert. denied*, 459 U.S. 1038, 103 S.Ct. 451, 74 L.Ed.2d 605 (1982)).

■ In *Berry v. General Motors Corp.*, 796 F.Supp. 1409 (D.Kan.1992), the plaintiff argued the defendant impermissibly failed to transfer her because of her sex. The defendant moved for summary judgment arguing plaintiff was less qualified than those transferred. Judge John Lungstrum denied defendant's motion reasoning, in part, as follows:

> GM claims that Ms. Howell was less qualified than those transferred based upon the criteria used by her supervisor for selecting employees to staff the new plant in Howell's department and job. Ms. Howell's supervisor considered such factors as general performance, people skills, and initiative. As with allegations of race discrimination, the use of such subjective criteria " 'entitles the plaintiff "to the benefit of an inference of discrimination," ' " especially when the evaluators are not members of the protected group. [Citation omitted]. The individual who made the

staffing decisions in Ms. Howell's department was male.

796 F.Supp. at 1422.

The Secretary contends that plaintiff was not hired after CWO Cordwell and MSG Bottom "determined that to obtain the best qualified individual for the position, a larger pool of qualified applicants was necessary." Secretary's Memorandum in Support (Doc. 65), filed April 15, 1994, at p. 27. Plaintiff argues these reasons "boil down to the position that [the Secretary] wanted 'to hire the best person for the job.'" Plaintiff's Memorandum in Opposition (Doc. 89), filed September 9, 1994, at p. 18. Essentially, plaintiff argues that, like the defendant in *Berry,* the Secretary's motion is based upon general assertions of good faith and a policy to hire only the best applicants. The court agrees.

It is undisputed that plaintiff was qualified for the position as originally announced. It is further undisputed that CWO Cordwell interviewed her, discussed his impressions with MSG Bottom, and then decided to reannounce the position because, as CWO Cordwell explained in his deposition, "we want the best person we can get in that position or any position." Regardless of how he packages his reasons, it is clear from the record that the decision to reject plaintiff and reannounce the position was inherently subjective. " '[T]he rejection of an otherwise qualified individual on the basis of subjective considerations entitles the plaintiff "to the benefit of an inference of discrimination." ' " *Pitre,* 843 F.2d at 1271 (quoting *Burrus v. United Telephone Co. of Kansas, Inc.,* 683 F.2d 339, 342 (10th Cir.) (quoting *Bauer v. Bailar,* 647 F.2d 1037, 1046 (10th Cir.1981), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982))). As in *Berry,* the evaluator making the subjective evaluation was not a member of plaintiff's protected group. Furthermore, CWO Cordwell appears to be

the hiring authority responsible for the largely unexplained gender disparity in the USPFO warehouse.

Additionally, as reannounced, the position invited applicants with different and, more importantly, somewhat lower qualifications.[13] For example, the position originally required one year of "general experience" and two years of "specialized experience," but, as reannounced, no minimum of the former was specified and only three months of the latter.

Therefore, based upon the record as a whole, and the reasoning of *Berry,* the court finds that there is a genuine issue of material fact as to whether the Secretary refused to hire plaintiff because of her sex.

### 3. *After-acquired Evidence*

The United States Supreme Court recently addressed the proper use in an unlawful discrimination case of after-acquired evidence of employee misconduct. *McKennon v. Nashville Banner Publishing Co.,* — U.S. —, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995).[14] The Supreme Court rejected the employer's argument that after-acquired evidence is a complete bar to relief. This result overrules Tenth Circuit authority to the contrary. *See, e.g., Summers v. State Farm Mut. Auto Ins. Co.,* 864 F.2d 700, 708 (10th Cir.1988). Thus, as the Secretary acknowledges, his argument based on *Summers* no longer is sound.[15]

### IV. *RUEGER AND CORDWELL'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT*

Rueger and Cordwell have been dropped as defendants pursuant to Rule 21. Their motion to dismiss or, in the alternative, for summary judgment is moot.

---

**13.** The court makes no comparison of the qualifications of those individuals who actually responded to the reannouncement and plaintiff's qualifications. Indeed, based on the record before it, such a comparison would not be possible.

**14.** Although *McKennon* is a case under the Age Discrimination in Employment Act of 1967, its reasoning is applicable to the instant case.

**15.** Despite disapproving of the use of after-acquired evidence as an absolute bar to relief, the Supreme Court approved of its use when determining appropriate remedial action. The court anticipates the parties will discuss how *McKennon* affects plaintiff's requested remedy in any trial briefs they submit.

**1504**

## V. *CONCLUSION*

**IT IS BY THE COURT THEREFORE ORDERED** that Rueger and Cordwell's motion to be dropped as defendants pursuant to Rule 21 (Doc. 47) is granted.

**IT IS FURTHER ORDERED** that the Secretary's motion for summary judgment (Doc. 64) is denied.

**IT IS FURTHER ORDERED** that Rueger and Cordwell's motion to dismiss or, in the alternative, for summary judgment (Doc. 66) is denied as moot.